**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William KING, Jr., Defendant–Appellant.**

**No. 94–1026.**

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided Sept. 22, 1994.

---

Thomas Day, St. Louis, MO, argued, for appellant.

Joseph Landolt, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

William King, Jr., pleaded guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and was convicted by a jury of carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). King appeals his conviction on the firearm count contending that the district court[1] erred in admitting testimony that constituted hearsay under Federal Rule of Evidence 801, excludable and prejudicial prior bad acts under Federal Rule of Evidence 404(b), and violated his rights under the Confrontation Clause of the Sixth Amendment. King also complains that the district court erred in failing to sustain his objection to statements made by the prosecutor in closing arguments which he contends impermissibly shifted the burden of proof. Finally, King asserts that the district court erred in imposing his sentence by failing to grant him a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). For the reasons articulated below, we affirm.

## I. BACKGROUND

In early June 1992, Special Agent Terry Bohan of the Bureau of Alcohol, Tobacco and Firearms (hereinafter "ATF") acquired information that an individual identified as "Bill" was dealing cocaine at 4044–A McRee in St. Louis, Missouri. The information described "Bill" as a black male between 5'8" and 5'10" with a thin build and long or curly type hair and who drove a black or dark blue Trans Am or Camaro with a T-top. Agent Bohan also learned that "Bill" carried a handgun.

Agent Bohan began conducting surveillance at 4044–A McRee on June 2, 1992, and based upon his observations, applied for a federal search warrant for the premises. The search warrant was executed on June 4 at 6:30 p.m. by several ATF agents, including Agent Bohan, along with members of the St. Louis Metropolitan Police Department. Agent Bohan testified that his duty during the execution of the warrant was to serve as "front cover," meaning he was to cover a corner of the premises so two sides of the building could be monitored simultaneously.

From his vantage point outside the residence and as the warrant was being executed, Agent Bohan observed a window open and a thin black male wearing a flowered-type print shirt with long curly hair throw an object out of the window. Agent Bohan immediately seized it. The object was a clear baggie containing white powder and other baggies. The white powder was later analyzed and determined to be 12.4 grams of cocaine.

Agent Bohan turned the baggie over to another officer and entered the premises where he observed that the person he saw throw the baggie out the window was in custody. That person was the defendant, William King. During the search of King's apartment, officers discovered a Derringer-type, two-shot pistol in a windowsill in the living room area. The gun contained one .22 caliber cartridge in the chamber at the time it was recovered.

Agent Bohan testified at trial that after completing the search at 4044–A McRee, he took King to the ATF Office in St. Louis where he advised King of his rights. King indicated that he fully understood his rights and discussed with Agent Bohan the events which transpired earlier that evening. King stated that he and another person had acquired a half-ounce of cocaine and that they were attempting to make it into "rocks" for distribution from his residence when he heard shouts of "police." King thereupon ran to the bathroom, opened a window, and

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

threw the baggie out the window. He then ran back through the house, grabbed the gun, and threw it into the window in the living room. King later reduced his oral statements to a writing in which he stated:

On June 4 1992 I got ½ ounce of cocaine to sell from my house at 4044A McRee St. Louis Mo. I sell packages 16th and 50th's.

I was in the kitchen with Anthony Coleman and we were about to rock up some packages when we heard the police outside yelling. I ran to the bathroom and through [sic] the cocaine out of the window. I then ran through [sic] the gun into the window in the living room. I used the gun to protect myself when I sell drugs. I've been selling drugs for about a year.

(Appellee's Exhibit 1). The written statement mirrors the oral confession King made earlier to Agent Bohan, with the exception of the last two sentences which King added when he was writing the document.

King was subsequently charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), and carrying a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c). On the second day of trial, King pleaded guilty to the charge of possession with intent to distribute. The trial continued on the firearm charge.

King testified at trial that he was a drug dealer and admitted that he dropped the baggie which contained cocaine out of the window but denied ownership of the gun. He asserted that the gun belonged to his girlfriend, Charlene Riley, who lived at the same residence. He denied using the gun for protection in his drug trade or exercising control over it at any time. King testified that he drafted the first paragraph of the written statement he provided to Agent Bohan. King asserted, however, that in the second paragraph of the statement he merely transcribed what Agent Bohan instructed him to write. King testified that he copied down Bohan's dictation for the contents of the second paragraph because Bohan promised that if he assisted law enforcement offi-

cers, his incriminating statement along with the gun and drugs would be destroyed.

Charlene Riley testified that she resided at 4044–A McRee with King and that she owned the gun seized from the apartment. She stated that King never possessed or used the weapon and that she kept the gun on a mantlepiece over her bed. She admitted on cross examination that King could have exercised control over the weapon if he desired. Finally, she admitted that although the gun was in fact hers, she had not contacted anyone or made any arrangement to obtain its return after it had been seized.

## II. DISCUSSION

### A. Admission of Out-of-Court Information

King first argues that the trial court erred in permitting Special Agent Bohan to testify that prior to conducting surveillance he received information that a man named "Bill" was selling cocaine from 4044–A McRee while possessing a handgun. King contends that this evidence is inadmissible hearsay under Federal Rule of Evidence 801, prejudicial prior bad acts evidence under Federal Rule of Evidence 404(b), and that its admission violated his right to confrontation under the Sixth Amendment.[2] The government argues that the statements were not hearsay because they were offered for the limited purpose of explaining why a police investigation was undertaken and not for the truth of the matter asserted. The government also argues that Rule 404(b) is inapplicable because these statements were not offered for their truth and, therefore, had no substantive effect on the jury's deliberations and, in any event, at trial King's objection was that he was not provided notice that 404(b) evidence would be used, not that the evidence was improper 404(b) evidence.

### 1. Hearsay and Confrontation Clause

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

2. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecu-

tions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

asserted." Fed.R.Evid. 801(c). However, an out-of-court statement is not considered hearsay if it is admitted not for its truth but for the limited purpose of explaining to the jury why a police investigation was undertaken. *United States v. Collins,* 996 F.2d 950, 953 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 412, 126 L.Ed.2d 359 (1993); *United States v. Watson,* 952 F.2d 982, 987 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992).[3] We review the trial court's admission of evidence for a clear abuse of discretion. *See United States v. Johnson,* 934 F.2d 936, 942 (8th Cir.1991).

■ King acknowledges the above authority but contends that the statements offered in this case fall within the ambit of those we condemned in *United States v. Azure,* 845 F.2d 1503 (8th Cir.1988). We find *Azure* to be sufficiently distinguishable from the facts at hand. In *Azure,* a victim of sexual abuse informed a social worker that Azure was the perpetrator of her injury. *Id.* at 1506. The social worker was allowed to testify that the victim identified Azure as her abuser. *Id.* The government contended that the victim's out-of-court statements to the social worker were not offered for the truth of the matter asserted but merely "to explain why the investigation focussed on Azure." *Id.* at 1507. We held that this testimony was erroneously admitted because "[t]he only possible relevance of [the victim's] identification of Azure and of the government's subsequent investigation of him is that he in fact was the person who abused her." *Id.* at 1507.

■ In the case at bar, the trial judge stated in a proceeding held while the jury was out of the courtroom that the information was "simply background information laying the basis for the obtaining of the search warrant, and that it was appropriate for the jury to consider as information which could have led to the request by the agent for the search warrant and the subsequent issuance of the search warrant by Magistrate Perry. I further indicated to counsel [at the unreported sidebar conference held when the defense counsel first objected to the recitation

of the evidence during the prosecutor's opening statement] that I would receive the information, not for the truthfulness of it, but to explain the actions of the agent with respect to the warrant itself." (Trial Tr. at 162–63.) No instruction was given to the jury that they were not to consider the evidence for the truth of the matter asserted nor that they were to limit its use to the purposes for which the trial court admitted it.

While we are concerned that the jury's use of this evidence was not appropriately limited by an instruction from the court and it therefore could have considered the out-of-court statements about "Bill" to be true with respect to the defendant's guilt or innocence, we are satisfied that the court did not abuse its discretion in determining initially to admit the evidence for the nonhearsay reasons it stated on the record.

■ Because King alleges a violation of his right to confrontation under the Sixth Amendment, we apply the harmless error standard from *Chapman v. California,* 386 U.S. 18, 25, 87 S.Ct. 824, 828–29, 17 L.Ed.2d 705 (1967). Under *Chapman,* "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. No objection to the court's failure to give a limiting instruction was made. Our careful review convinces us that even if the court committed error, plain or otherwise, in either admitting the evidence or in failing to give a limiting instruction to the jury, such error was harmless beyond a reasonable doubt.

The other evidence offered against King was overwhelming. First, King himself drafted a written confession in which he admitted not only to throwing the gun out of the window on the day the search warrant was executed, but possessing the gun in his drug trade. Agent Bohan testified that King admitted to him prior to drafting the written confession that he tried to throw the gun out of the window the day the search warrant was executed. King acknowledged under cross examination that he knew that it was

---

**3.** King's contention that his rights under the Confrontation Clause were violated by the admission of this testimony is subject to this rule as well. *See Watson,* 952 F.2d at 987 (holding that out-of-court statements that are offered to explain a police investigation are neither hearsay nor violative of the Confrontation Clause).

illegal to possess a weapon when dealing drugs. Agent Bohan observed King throw drugs out of the house and, upon a subsequent search of the residence, a loaded Derringer was discovered in a windowsill by a window where a screen was installed which prevented the Derringer from exiting the premises in a manner similar to the cocaine. King told the jury in his own direct examination that he had previously been twice convicted of drug trafficking in crack cocaine, of possession of cocaine, and of carrying a concealed weapon. The jury was well able to assess the credibility of his version of the events on the day in question, determine whose version, or if neither version, was true, and find the facts accordingly. Even if we choose to believe the testimony of Charlene Riley concerning her ownership of the weapon, the weapon was moved from above her bed to the living room windowsill at a time when King, aware that the gun was in the house and aware that a search warrant was being executed at 4044A–McRee, was getting rid of incriminating evidence. Any error in the admission of Agent Bohan's disputed testimony was harmless beyond a reasonable doubt and therefore does not require us to reverse King's conviction.[4]

### 2. *Prior Bad Acts Under Rule 404(b)*

King also contends that the admission of Special Agent Bohan's testimony about "Bill" violates Federal Rule of Evidence 404(b). The government contends that King's argument must be reviewed for plain error because King's objection at trial focused on the notice aspect of 404(b) and not on admission of such evidence. We have held that evidence of "acts other than those charged in the indictment is admissible ... if it completes the story of the crime on trial by proving its immediate context." *United States v. Ulland,* 643 F.2d 537, 540 (8th Cir.1981). However, we need not resolve the 404(b) issue because we believe, for the same

reasons set forth in Part II.A.1. of this opinion, that any error in the admission of this testimony was harmless.[5]

### B. Prosecutor's Closing Argument

King next claims that the trial court erred in failing to sustain his objection to several statements the prosecutor made during the government's rebuttal closing argument. He argues that the prosecutor committed prosecutorial misconduct by making statements which impermissibly lowered the government's burden of proof to a preponderance of the evidence.

■ To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial. *United States v. Bussey,* 942 F.2d 1241, 1253 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1936, 118 L.Ed.2d 542 (1992). A trial court is "vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion." *United States v. Eldridge,* 984 F.2d 943, 946 (8th Cir.1993).

■ The disputed statements referred to the conflicting testimony Agent Bohan and King gave at trial concerning the contents of King's written statement:

> MR. LANDOLT [Prosecutor]: How do we know who's telling the truth here?
>
> Well, it's not just quite so simple.
>
> As a matter of fact, as the finders of the facts and determiners of the credibility here, you do have a choice. And to decide whether or not you can rely on Special Agent Bohan's testimony, you have to decide whether or not the defendant was telling the truth when he contradicted that testimony.
>
> MR. DAY [Defense Counsel]: Objection, your Honor. That's a misstatement of the burden of proof.

---

**4.** Our holding that the admission of the out-of-court statement was harmless error under the *Chapman* standard subsumes the Rule 52(a) analysis applicable to King's hearsay argument, since the Chapman standard imposes a higher burden upon the beneficiary of the error than Rule 52(a). *See United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.) (holding that *Chapman* harmless error analysis is stricter than its

Rule 52(a) counterpart), *cert. denied,* — U.S. —, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994).

**5.** The harmless error standard from Rule 52(a) applies to King's 404(b) arguments in that no constitutional issue is presented therein. *See DeAngelo,* 13 F.3d at 1233.

MR. LANDOLT: That is the evidence folks, and your determination is based solely on the evidence and who is telling the truth.

Look at this statement. I want you to look at this statement.

Remember everything in the second statement, if you believe the defendant is false, was dictated by Terry Bohan.

(Trial Tr. at 298.) The prosecutor's remarks were made after the defense counsel stated on four separate occasions in his argument that the jury had to accept Agent Bohan's testimony "without hesitation" before it could find King guilty.

We conclude that the prosecutor's statements were not improper and did not misstate the burden of proof. The comments King takes issue with merely directed the jury's attention to a conflict in the testimony between King and Agent Bohan and asked the jury to resolve the credibility between the two witnesses. Moreover, we find that the prosecutor's statements were a fair response to those made by defense counsel, specifically those referring to "without hesitation." Finally, we observe that during the course of the trial as well as in its instructions, the trial court informed the jury that they were to follow the law which the court provided, notwithstanding arguments that the attorneys made. Some of those instructions were given when the defense counsel's argument was interrupted by prosecution objections that the arguments were misstatements of the law. The jury was instructed that the Government was required to prove King's guilt beyond a reasonable doubt in order for him to be found guilty of the crime charged. We hold that the trial court did not abuse its discretion in failing to sustain King's objection. *See United States v. Baker*, 855 F.2d 1353, 1362 (8th Cir.1988) (no impermissible shifting of burden of proof where prosecutor's arguments were a fair comment on the evidence, the jury was instructed that counsel's statements were not evidence, and the burden of proof remained with the government), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989).

King also takes issue with several other comments the prosecutor made in closing argument, but King failed to object to them at trial. We review these comments for plain error. *United States v. McMurray*, 20 F.3d 831, 834 (8th Cir.1994). King "is entitled to relief only if the error would result in a miscarriage of justice if uncorrected." *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir.1994) (internal citations and quotations omitted). " 'If an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances.' " *Eldridge*, 984 F.2d at 947 (quoting *United States v. Nabors*, 761 F.2d 465, 470 (8th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985)). After carefully reviewing the record, we determine that no plain error occurred and no exceptional circumstances exist.

## C. Reduction for Acceptance of Responsibility

King claims that the district court erred at sentencing in determining that he was not entitled to an acceptance of responsibility reduction under U.S.S.G. § 3E1.1. Specifically, King contends that because he confessed to the possession with intent to distribute charge on the day he was arrested and later pleaded guilty to that offense, albeit on the second day of trial, the trial court erred in failing to grant him the reduction. The trial court denied the reduction on the basis that King's guilty plea to Count I of the indictment did not alleviate the government of its proof because Count II of the indictment required much of the same proof that was required in Count I.

We review a district court's findings of fact with respect to a denial of a motion for acceptance of responsibility under the clearly erroneous standard. *United States v. Miller*, 951 F.2d 164, 165 (8th Cir. 1991). "[T]he district court is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Furlow*, 980 F.2d 476, 476 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 2353, 124 L.Ed.2d 261 (1993). We will overturn a trial court's decision denying an acceptance of responsibility reduction only if "it is without foundation." *United States v. Ransom*, 990 F.2d 1011, 1013 (8th Cir.1993) (quoting

*United States v. Johnson,* 879 F.2d 331, 335 (8th Cir.1989)). A defendant is not automatically entitled to the reduction merely as a result of entering a guilty plea. U.S.S.G. § 3E1.1, comment. (n. 3); *United States v. Yell,* 18 F.3d 581, 584 (8th Cir.1994). The acceptance of responsibility reduction is "not intended to apply to a defendant who puts the government to its burden of proof at trial...." U.S.S.G. § 3E1.1, comment. (n. 2); *United States v. Amos,* 952 F.2d 992, 995 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1774, 118 L.Ed.2d 432 (1992).

 As the trial court noted, the practical effect of King's guilty plea had little effect on the quantum of evidence the government was required to present. The government was still required to provide the facts surrounding the execution of the search warrant on June 4 to show King's ability to exercise control over the weapon as well as his inculpatory postarrest statements. Further, the government was not bound by King's guilty plea to refrain from presenting evidence regarding the drug count. "It is well established in this circuit that as a general rule, the government is not bound by a defendant's offer to stipulate." *United States v. Hiland,* 909 F.2d 1114, 1134 (8th Cir.1990). While putting the government through the rigors of a trial is not a per se bar to a reduction for acceptance of responsibility, the trial court enjoys wide latitude in this area. There was nothing to show that King was entitled to acceptance of responsibility on Count II. After fully reviewing the record, we cannot say that the decision to deny King the reduction for acceptance of responsibility was "without foundation" or clearly erroneous.

## III. CONCLUSION

For the reasons enumerated above, we affirm the judgment of the district court.