UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 96-3859

United States of America,          *
                                          *

       Appellee,                   *
                                          *

         v.                     *
                                          *        Appeal from the United

Richard Beck,                  *        States District Court
for                               *          the Eastern
District of
                                          *        Missouri

       Appellant.                 *

Submitted:  May 20, 1997

                                          Filed:
September 5, 1997

Before BEAM, FRIEDMAN[*], and LOKEN, Circuit Judges.

FRIEDMAN, Circuit Judge.

The appellant Richard Beck challenges his conviction under 18 U.S.C. § 922(g) for a felon possessing a firearm, on the grounds that the district court improperly (1) refused to quash a search warrant, and to suppress evidence seized pursuant thereto, (2) permitted a non-admitted exhibit to go to the jury and (3) admitted certain evidence. We affirm.

---

[*] DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

I.

A jury in the United States District Court for the Eastern District of Missouri convicted Beck of one count of being a felon in possession of a firearm. The district court[1] sentenced him to 318 months imprisonment.

The indictment charged Beck with six counts of distribution of marijuana, in violation of 18 U.S.C. § 841(a), and three counts of a felon in possession of a firearm. The government dropped eight of the counts and went to trial only on a single firearms count (Count IX).

At trial, the government introduced into evidence three firearms that had been seized from Beck's home pursuant to a search warrant issued by a Missouri state judge and proof that the three firearms had been transported in interstate or foreign commerce. Beck stipulated to his prior felony convictions charged in Count IX. In his appeal Beck does not challenge the sufficiency of the evidence to establish these latter two elements of the offense.

Prior to trial, Beck filed separate motions to quash the search warrant and to suppress the seized material. He contended that there was not probable cause to justify the issuance of the warrant, that the warrant did not sufficiently identify the articles to be seized, and that the officers executing the warrant improperly seized his personal papers containing information about an unrelated case involving him. After separate evidentiary hearings on each motion, the

---

[1] The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

magistrate judge,[2] to whom pre-trial matters in this case had been assigned, recommended that both motions be denied. She concluded that the facts "show that there was a substantial basis for concluding that probable cause existed," and that "[t]here is no evidence before the court that one of the purposes of the search was the seizure of defendant's legal papers." The district court adopted the magistrate judge's recommendation and denied reconsideration.

II.

A. Beck contends that probable cause did not exist for the issuance of the search warrant. The magistrate judge and the district court correctly rejected this contention.

1. At the hearing on the motion to quash, the government presented the testimony of Detective Farrar, a member of the Drug Enforcement Bureau of the St. Louis County Police Department. Farrar stated that a confidential informant, later identified as Luke Abkemeir, told him that Beck had marijuana and dilaudid for sale. Farrar arranged a controlled purchase in which, after searching the informant and his truck, Farrar gave him funds for the purchase, observed him enter and leave Beck's home and then received from him marijuana he said he had just purchased from Beck. The informant also stated that Beck had offered to sell him a handgun. Farrar arranged at least four similar additional controlled purchases of both firearms and marijuana, in which the informant emerged from Beck's residence with guns and/or drugs that he stated he had just purchased from Beck.

Farrar set forth these facts relating to the controlled purchases of drugs and

_____

[2] The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

3

firearms from Beck through the confidential informant over the preceding six weeks in a lengthy and detailed affidavit he filed to support the statement in his application for a search warrant that the identified premises (Beck's home) "is being used for the purpose of secreting:

> COMPONENTS FOR ILLEGAL EXPLOSIVE DEVICES, WEAPONS
> MARIJUANA:  A SCHEDULE I CONTROLLED SUBSTANCE
> DILAUDID:  A SCHEDULE II CONTROLLED SUBSTANCE
> U.S. CURRENCY, DRUG PARAPHERNALIA, NOTES AND LEDGERS OF
> ILLEGAL DRUG TRANSACTIONS AND DOCUMENTS RELATED
> HOMICIDES"

The warrant used the identical language in specifying the subject matter of the search.

In his return to the warrant, Farrar stated that the material he had seized included marijuana, dilaudids, four handguns and "misc. papers (personal)."

2.  "The duty of the officer issuing a search warrant is to make a `practical, common-sense decision' whether a reasonable person would have reason to suspect that evidence would be discovered, based on the totality of the circumstances."  United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).  On appeal, the reviewing court must determine if the issuing officer had a "substantial basis" for concluding that probable cause existed. United States v. Jackson, 67 F.3d 1359, 1365 (8th Cir. 1995), cert. denied, 116 S. Ct. 1684 (1996).

The affidavit on the basis of which the warrant was issued stated that Detective Farrar had made several controlled purchases of firearms and drugs, in

4

which the confidential informant had been searched and given money, had entered Beck's house and had left it carrying firearms and drugs that he turned over to Farrar and that he stated he had just purchased from Beck. Based on this information, the Missouri state judge "would have reason to suspect" that firearms and drugs "would be discovered" in the house in which the confidential informant said he had made the purchases, and the judge had a "substantial basis" for concluding that probable cause existed.

B. Beck argues that the warrant was impermissibly broad because it authorized a search for "weapons," which he asserts could include "any item in defendant's house which could have been used as a weapon, including kitchen knives, baseball bats, golf clubs," etc. Because of the alleged breadth of the term "weapons," Beck contends that the warrant did not satisfy the Fourth Amendment's express requirement that the warrant "particularly describ[e] . . . [the] things to be seized." U.S. Cont. amend. IV.

Whatever may be the scope of the term "weapons" in other contexts, it plainly covered the firearms that were seized. "[T]he requirement that a search warrant describe its objects with particularity is a standard of `practical accuracy' rather than a hypertechnical one." United States v. Peters, 92 F.3d 768, 769-770 (8th Cir. 1996) (citation omitted). "`[T]he language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized.'" United States v. Lowe, 50 F.3d 604, 607 (8th Cir.), cert. denied, 116 S. Ct. 260 (1995) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir.), cert. denied, 506 U.S. 889 (1992)). Here the police officers could have had no doubt that the warrant directed them to seize, as weapons, any firearms they found in the premises to be searched.

C.  Beck contends that the "participation" in the search of a federal agent invalidated it.  No federal agent was present during the search.  Detective Farrar testified at the suppression hearing, however, that he seized newspaper articles, clippings, and other papers because some "other [FBI] agents wanted to look at some of those particular files that [Beck] still had," and that Agent Coff "said that he was interested and if there was any files there."  Those papers were not introduced in evidence in the present case.

Although the warrant authorized the search for and seizure of "notes and ledgers of illegal drug transactions and documents related to homicides," these papers do not appear to come within those categories.  Beck's argument thus really is not that the participation of federal agents invalidated the search, but that the seizure of papers the warrant did not cover invalidated the entire search and seizure.

This court has held that the invalidity of part of a search warrant does not require suppression of material seized pursuant to another and valid part of the warrant.  See United States v. Fitzgerald, 724 F.2d 633, 637 (1983) (en banc) ("[W]e hold that the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant . . . but does not require the suppression of anything described in the valid portions of the warrant . . . ."), cert. denied, 466 U.S. 950 (1984).  There is no reason why this principle should not also apply to sustain the seizure of property pursuant to a valid portion of a search warrant even though other property may have been seized without authorization in the warrant.

Beck makes the related argument that the police's rummaging through and

6

seizing his private papers converted the search into a constitutionally impermissible general search. "A flagrant disregard for the limitations of the search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search." Marvin v. United States, 732 F.2d 669, 674-75 (8th Cir. 1984). The seizure of Beck's personal papers, however, even if unauthorized by the warrant, did not constitute such a "flagrant disregard" for the limitations of the warrant as to require invalidation of the entire search.

D. Finally, Beck contends that the state police had no right to search for weapons in his home because "[t]here is no Missouri law criminalizing the possession of firearms . . . in any private dwelling, whether the occupant is or is not a `convicted felon.'" Missouri law, however, does criminalize a convicted felon's possession of a firearm. See Mo. Rev. Ann. Stat. § 571.070 (West 1995) ("A person commits the crime of unlawful possession of a concealable firearm if he has any concealable firearm in his possession and: (1) He has . . . been convicted of a dangerous
felony . . . .").

III.

Government exhibit 10 consisted of the search warrant, the return, the application for the warrant and the supporting affidavit. Beck contends that although exhibit 10 was not received in evidence, the court sent it to the jury, and that because the affidavit contained allegations that Beck was responsible for bombings and homicides, the transmittal of this exhibit to the jury was plain error that, because of its prejudicial effect, requires reversal of his conviction.

The record, however, does not establish the factual predicate of Beck's

7

argument, i.e., it does not show that exhibit 10 was sent to the jury.

After the court had instructed the jury, the following colloquy occurred:

THE COURT: I don't know as you offered your exhibits.

MR. MEHAN [the prosecutor]: I did it whenever I said -- with the admission of my exhibits -- I would rest, but I formally do that again at this time.

THE COURT: Is there any objections to the exhibits?

MR. GAVRAS [Beck's counsel]: Well, the previous objections made, Your Honor.

THE COURT: All right.

MR. GAVRAS: So far -- I would like to have a closer look at some of the exhibits if I could before they're admitted.

Also, Judge, I would like to formally, I don't know if I did or not, but -- I believe it's B-1 was evidence that was identified by --

THE COURT: All right. Do you want to offer that?

MR. GAVRAS: I would like to offer it.

THE COURT: Any objection?

MR. MEHAN: No, Judge.

THE COURT: It will be received. Okay. We'll send the exhibits up later.

Mrs. Kramer will take the instructions with her and the verdict form and then we'll send up the exhibits.

(Trial tr. at 2-222-223)

The jury retired and the court stated:

The government's exhibits will be received then.
When you take those up, if you will tell the jury that we are not sending up the guns or narcotics. Okay? Very good.

8

(Trial tr. 2-223)

The index to that volume of the trial transcript lists 23 government exhibits (as well as defendant's exhibits H through S and B-1) as "received" at page 223; Exhibit 10, however, is not listed as having been received in evidence.

Beck argues that because the court stated that "[t]he government's exhibits will be received" and that "[w]hen you take those" the jury should be told that they would not receive the firearms or narcotics, the court sent to the jury "All government exhibits . . . except for `the guns' and `the narcotics.'"

Nothing in the record supports Beck's contention that all the government's exhibits, whether admitted or not, were sent to the jury. To the contrary, the court's statements about sending the exhibits to the jury in the context shows that the court was referring to the exhibits, both the government's and the defendant's, that it had received into evidence just a moment before (together with exhibits previously received). Nothing in the record indicates that any exhibits that had not been received in evidence were sent to the jury. Beck himself asserts, as the reporter's index shows, that government exhibit 10 had not been received in evidence. The burden was on Beck to establish that exhibit 10 was sent to the jury, and he has failed to do so.

IV.

Beck contends that the district court improperly permitted Detective Farrar to testify about his purchases from Beck, through the confidential informant Abkemeir that were charged in counts of the indictment that the government dismissed before trial. He argues that this evidence constituted inadmissible "other crimes" evidence in violation of Fed. R. Evid. 404 and hearsay in violation

9

of Fed. R. Evid. 802.

A.  In his brief Beck states that his "entire defense was that Abkemeier (sic) had planted the guns defendant was charged with possessing in Beck's residence in retaliation for Beck's earlier refusal to bond him out.  Thus, the case rose or fell on Abkemeier's (sic) credibility as opposed to that of the defense witnesses."  Beck explained his theory in his opening statement and, through cross-examination of the government's witnesses and through his own witnesses, attempted to show that certain statements in the affidavit that Farrar said Abkemeir had made to him, were untrue.  Beck contended that the three guns involved in count IX belonged to Abkemeir, not to him and that Abkemeir's allegedly false statements to Farrar were relevant in deciding that question.  In rebuttal, the government called Abkemeir as a witness, who described his firearms purchases from Beck and stated that he did not own or plant in Beck's house the three firearms seized under the warrant.

It was Beck, and not the government, who raised the issue of Abkemeir's credibility.  Farrar's testimony regarding the events detailed in the affidavit was proper because it was designed to refute Beck's contention.  Although it may have related to other crimes Beck had committed, it was not offered to show Beck's propensity to commit the crime of which he was convicted, but to bolster Abkemeir's credibility.  "Federal Rule of Evidence 404(b) allows the use of evidence about `other crimes, wrongs, or acts' if it has a bearing on any relevant issue other than the defendant's propensity toward criminal activity."  United States v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996).  The district court offered to give a limiting instruction on the evidence, but Beck rejected it.  The district court did not abuse its discretion or commit legal error in admitting the evidence.

B.  Beck's hearsay contention fares no better.  To the extent Farrar described what he did and observed in connection with his controlled purchases of marijuana and firearms from Beck through Abkemeir, his testimony was not hearsay at all.  If his testimony that when Abkemeir turned over those items to him, Abkemeir stated that he had just purchased them from Beck was hearsay, it came within the hearsay exception in Rule 803(1) of the Federal Rules of Evidence for "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Abkemeir's statement explained how he possessed the marijuana and firearms he turned over to Farrar and was made immediately after he had purchased them from Beck.  All the events were part of a single, continuous event.  Cf. United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991) (statement of baggage handler to police that defendant told him that bag belonged to her was admissible in trial on drug charges under present sense impression exception to hearsay rule where there was sufficient contemporaneity between statement of defendant to handler and statement by handler to police).

Finally, Farrar's testimony that at the outset Abkemeir told him that Beck had drugs for sale and that, after the first controlled purchase of marijuana, Beck had offered to sell him a firearm, was properly admitted as background information explaining the reasons that led Farrar to arrange the controlled purchases. See United States v. King, 36 F.3d 728, 732 (8th Cir. 1994) (explaining that "[a]n out-of-court statement is not considered hearsay if it is admitted not for its truth but for the limited purpose of explaining to a jury why a police investigation was undertaken."  Such non-hearsay statements may include "background information laying the basis for the obtaining of the search warrant and information which could have led to the request by the agent for the search

11

warrant and the subsequent issuance [thereof]."), <u>cert.</u> <u>denied</u>, 115 S. Ct. 954 (1995).  In any event, in view of the other strong evidence in the record supporting Beck's guilt, any possible error in admitting these relatively minor items of evidence was harmless.

## CONCLUSION

The judgment of the district court is affirmed.


A true copy.


ATTEST:


CLERK, U.S. COURT OF APPEALS, 8th CIRCUIT