# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1185

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Melvin Luis Velazquez-Rivera, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 15, 2003

Filed: April 27, 2004

_____

Before WOLLMAN, JOHN R. GIBSON, and RILEY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Melvin Luis Velazquez-Rivera appeals from his conviction for conspiracy to distribute 500 grams of cocaine and possession of one kilogram of cocaine with intent to distribute it. He argues that police lacked probable cause to arrest him and therefore the district court[1] should have suppressed evidence seized from a Ford pickup truck that was impounded upon Velazquez's arrest. He also contends that the prosecution practiced race discrimination in using a peremptory strike on a

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

veniremember with a Hispanic surname.  Finally, he contends that the district court erred in admitting evidence that the reason police were surveilling a certain address was that they had a tip from a confidential informant that there would be a drug delivery at the address.  We affirm the convictions.

The probable cause issue was decided after a suppression hearing, and we take the facts from that hearing, as well as the fuller version given at trial.  See United States v. Corona-Chavez, 328 F.3d 974, 979 n.5 (8th Cir. 2003) ("This court considers the entire record, including trial testimony, in reviewing denial of a motion to suppress.")  On March 25, 2002, Minneapolis police received a tip from a confidential informant that a blue Ford pickup truck would deliver a load of cocaine from Chicago to 3308 19th Avenue South in Minneapolis.  One of the officers was familiar with the address because he had participated in an undercover narcotics transaction there.  The police set up surveillance at the address.  At 2:55 p.m. on March 25, they saw a blue Ford pickup with Minnesota plates pull up behind the apartment building at that address, with just one person in it.  The driver, Miguel Angel Montesino-Rivera,[2] got out, walked up to the apartment building, and went inside. Just then, police received a phone call from the confidential informant saying that the truck had a large amount of cocaine in it. Montesino and Velazquez came out of the building, drove the pickup to a McDonald's to eat, and returned to the apartment at 19th Avenue South.  Another man came out of the building, got in the pickup, and left with Montesino and Velazquez.  The police followed.  The pickup drove to 2323 16th Avenue South, where the third man went inside for a while; when he came back, Velazquez and Montesino dropped him off at 3308 19th Avenue South before going on their way. As police followed behind them, Velazquez turned around and looked straight at the unmarked police car; after that, Montesino appeared to realize that he was being followed and began driving faster and making sharp turns.

_____

[2]Because of the similarity of names between Montesino-Rivera and Velazquez-Rivera, we will refer to them as Montesino and Velazquez.

They drove to 5717 31st Avenue South, another apartment complex, parked in back, and walked quickly to the building, with the police behind them yelling, "Police, Narcotics, Stop." Montesino and Velazquez quickly unlocked the door and ran inside. When police gained access to the building, they found Velazquez and Montesino in the hallway, where Velazquez was doing something to his cell phone. They later found a discarded memory chip from the cell phone in the hallway. Police noticed that Velazquez had changed his shirt, and they found the old shirt discarded in the hallway. They also found Montesino trying to throw the keys to apartment 201 under the door of apartment 215.

Police arrested Montesino and Velazquez. They then impounded the pickup and conducted an inventory search, finding more than a kilogram of cocaine inside. They obtained a warrant to search apartment 201, where they found cocaine and drug paraphernalia.

Velazquez moved to suppress the evidence found in the truck and the apartment, contending that those searches resulted from his arrest, for which police did not have probable cause. The magistrate judge[3] to whom the motion was referred concluded that there was probable cause to arrest Velazquez consisting of the following: the tip from the informant that a truck loaded with cocaine would arrive at the 19th Avenue South location, which was corroborated when the truck arrived as predicted and the informant called at the same time to say the truck was arriving; Montesino's evasive driving maneuvers after he and Velazquez appeared to realize they were being followed by the police car; and Velazquez's discarding his black t-shirt while the police were trying to get into the building at 31st Street. The district court conducted a de novo review of the magistrate's report and accepted the recommendation to deny the motion to suppress.

_____

[3]Magistrate Judge Arthur J. Boylan of the District of Minnesota.

Velazquez contends that the motion to suppress should have been granted because there was not probable cause to arrest him and the searches followed from the arrest. On appeal of the denial of a motion to suppress evidence, we review the district court's findings of fact under the clear error standard and we conduct de novo review of its conclusions of law. United States v. Corona-Chavez, 328 F.3d 974, 978 (8th Cir. 2003). The existence of probable cause is a mixed question of fact and law reviewed de novo. Ornelas v. United States, 517 U.S. 690, 696-99 (1996). Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime. United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001).

The facts that support a conclusion of probable cause include those cited by the magistrate judge: the tip from the confidential informant that was corroborated before the police officers' eyes when the truck pulled up where the informant said it would and the informant called simultaneously to confirm that fact, see United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994) (informant's tip was factor supporting probable cause where tip corroborated by police investigation); Montesino and Velazquez's apparent attempts to elude the police by evasive driving; and Velazquez's discarding of his t-shirt in an apparent attempt to disguise himself. Added to this list are the facts that one officer had personal knowledge that drugs were being traded at the South 16th address; Velazquez and Montesino hurried into the 31st Street apartment with the police yelling for them to stop; Velazquez removed and threw away the memory chip from his cell phone; and Montesino threw the keys to apartment 201 under the door of apartment 215 as the police were forcing their way into the building. Cf. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (flight is factor that, together with other factors, supports conclusion of reasonable suspicion); United States v. Schaafsma, 318 F.3d 718, 722 (7th Cir. 2003) (flight contributed to probable

cause); <u>United States v. Wadley</u>, 59 F.3d 510, 510-12 (5th Cir. 1995) (same); <u>United States v. Dotson</u>, 49 F.3d 227, 231 (6th Cir. 1995) (same).

As a counterweight to all these facts, Velazquez argues that the confidential informant was not shown to be reliable because the informant indicated that the truck would be blue, whereas one police report stated that the truck that actually pulled up to the apartment was green; the informant did not give the license plate of the truck; and the truck had Minnesota plates, whereas the informant said the cocaine was from Illinois. None of these discrepancies is material. The truck was apparently a color that could be called blue, since the witnesses at trial described it as blue, even as they were viewing a photograph of the truck. A license plate number is not necessary for the informant's tip to be considered reliable, especially in light of other corroboration of the tip. Finally, a truck with Minnesota plates could have come from Illinois, so the final discrepancy is no discrepancy at all.

Velazquez also argues that his presence as a passenger in a truck that was believed to be hauling cocaine does not create probable cause that he possessed or conspired to possess or distribute the cocaine, citing <u>United States v. Di Re</u>, 332 U.S. 581 (1948). In <u>Maryland v. Pringle</u>, 124 S. Ct. 795, 802 (2003), the Supreme Court held that presence as a passenger in a car carrying drugs and $763 established probable cause to arrest the passenger, where no one in the car offered any information about the ownership of the drugs or money; the Court distinguished <u>Di Re</u> on the ground that in <u>Di Re</u> the government had information linking one of the other passengers in the car to the contraband, whereas in <u>Pringle</u> there was no information as to who among the three passengers owned the contraband. 124 S.Ct. at 801. In this case, no one clarified who owned the drugs in the truck because both occupants fled from the truck to the house without stopping to talk to the police. Thus, Velazquez's presence in a truck police reasonably (and accurately) suspected was carrying commercial quantities of cocaine was an important factor in giving the police probable cause to arrest him.

Moreover, other facts in addition to presence in the truck combined to create probable cause to arrest Velazquez. One officer had personal knowledge that the South 16th address was being used for drug transactions. Velazquez appeared to be actively involved in eluding police, both while in the truck, and then while fleeing into the apartment while police were shouting and chasing him. Velazquez tried to disguise himself by changing out of the black t-shirt, he tried to dispose of the memory chip in his cell phone, and his companion Montesino threw the keys to apartment 201 under someone else's door. This evidence is sufficient to show that police had probable cause to arrest Velazquez.

## II.

Velazquez contends that the district court failed to conduct a proper <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), inquiry into the prosecution's peremptory strike of venirewoman Vickie Ramirez. Velazquez contends that the district court did not allow him to prove that the nondiscriminatory reasons offered by the prosecution for its decision to strike Ms. Ramirez were pretextual and that the district court failed to make a finding on this issue. Our review of the record disproves both of these contentions.

Under <u>Batson</u>, a party who opposes a peremptory strike may make a prima facie case of discrimination by showing that the circumstances support an inference that a peremptory challenge was based on race discrimination. <u>U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.</u>, 320 F.3d 809, 812-13 (8th Cir. 2003). If the objecting party makes a prima facie case, the proponent of the strike must give a nondiscriminatory explanation for the strike. <u>Id.</u> The district court then must decide the ultimate question of whether there was purposeful discrimination. <u>Elmahdi v. Marriott Hotel Servs., Inc.</u>, 339 F.3d 645, 651 (8th Cir. 2003); <u>Hall v. Luebbers</u>, 341 F.3d 706, 713 (8th Cir. 2003). Since the district court's findings will largely turn on

credibility, we should give those findings "great deference." <u>Batson</u>, 476 U.S. at 98 n. 21; <u>Elmahdi</u>, 339 F.3d at 651 (reviewing district court's findings for clear error).

The record shows every step was observed in due order. Velazquez's counsel objected to the striking of Ms. Ramirez, stating that although counsel did not know if Ms. Ramirez was of Hispanic origin, she had a Hispanic surname. The prosecutor expressed doubt as to whether striking someone with a Hispanic surname established a prima facie case under <u>Batson</u>, but he nevertheless proceeded to the second step. He stated that he struck Ms. Ramirez because she was a nurse and he followed a rule of striking teachers and nurses; that she was highly educated and therefore might dominate the jury; and that she appeared particularly kind and sympathetic, qualities he considered undesirable in a juror. He also mentioned that he had also stricken a nursing assistant who did not fall into a protected category under <u>Batson</u>. The court asked Velazquez's counsel, "Anything else, Mr. Gray?" and counsel replied, "Her name is Ramirez and she got struck." The court ruled:

> Well, I'm going to overrule the objection on the Baton [sic] challenge. I don't think you made a showing that the striking was for other than legitimate reasons, and I'm satisfied with the Government's explanation for the strike is sufficient to take it out from under Baton [sic].

Assuming without deciding that Velazquez made a prima facie case of <u>Batson</u> discrimination, the record establishes that Velazquez was given the opportunity to develop the record and the district court made findings that the government's proffered nondiscriminatory reasons were genuine. The district court's findings were not clearly erroneous. The <u>Batson</u> argument has no merit.

III.

Velazquez contends that the district court erred in admitting testimony that the police set up surveillance at 3308 19th Avenue South because they had an informant's tip that drugs were about to be delivered there.

We review the district court's admission of evidence for abuse of discretion. United States v. Brown, 110 F.3d 605, 609 (8th Cir. 1997). Even if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless. Id.

An out-of-court statement used to explain why police took a certain action in their investigation is not hearsay. United States v. Beck, 122 F.3d 676, 682 (8th Cir. 1997); United States v. King, 36 F.3d 728, 732 (8th Cir 1994). The testimony explaining how the police came to be surveilling the 19th Avenue address is therefore not hearsay.

Velazquez's brief essentially concedes as much, but contends that the district court erred in failing to give a limiting instruction. We review for abuse of discretion the district court's decision about whether to give a limiting instruction, United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2003), and we will not reverse if the denial of the instruction was harmless, see King, 36 F.3d at 732-33.

The testimony did not name or describe Velazquez. Velazquez was not the driver of the truck the informant predicted would arrive at 19th Avenue. The informant's statement, even if taken for its truth, would only establish that the truck had drugs in it, a fact which was established at trial far more directly by the evidence that police found cocaine inside the truck. Although it is desirable to give a limiting instruction when testimony is admitted for a limited purpose, see United States v. Chapman, 345 F.3d 630, 633 (8th Cir. 2003), cert. denied, No. 03-8948, 2004 WL

322686 (March 22, 2004), in light of the strong evidence that a truck carrying drugs did indeed arrive at the 19th Avenue address and the fact that the informant's statement did not inculpate Velazquez, we perceive neither an abuse of discretion nor harm from the failure to give a limiting instruction.

We affirm Velazquez's convictions.

_____