# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2646

_____

United States of America,

*Plaintiff - Appellee,*

v.

Patrick Harding,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: February 10, 2017
Filed: July 28, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Patrick Harding was convicted by a jury of unlawful possession of a firearm as a previously convicted felon and possession of a stolen firearm. The district court[1] sentenced him to 20 months' imprisonment. Harding raises several points in a

_____

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

challenge to the judgment. He complains that the district court erred when it overruled his objections to the government's peremptory strikes of two Native-American prospective jurors. He contends that the court should have appointed counsel for two prosecution witnesses and advised them of their Fifth Amendment privilege against self-incrimination. And he argues that the court abused its discretion when it denied his motions for a mistrial and a continuance based on surprise testimony at trial. We conclude that the district court committed no reversible error, and we therefore affirm.

I.

In August 2014, Rapid City police officers were called to the Parkway Carwash. Lynda Ruud told the officers that Harding had a Glock .40 caliber handgun in the waistband of his pants. Harding had departed the car wash, and the officers found him at Donald Macpherson's house.

Officers arrested Harding, and Macpherson consented to a search of his home. Police found a green Menards bag that contained personal documents belonging to Harding, a loaded Glock .40 caliber handgun, an inner waistband holster, a magazine holster, and a loaded extra magazine. The firearm and accessories were later identified as items stolen in May 2014 from a vehicle parked outside the Oasis Lounge, a tavern in downtown Rapid City.

A grand jury charged Harding with possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). The case proceeded to trial, a jury found Harding guilty on both counts, and the district court imposed sentence.

Harding's first issue on appeal concerns the government's exercise of peremptory strikes during jury selection. Harding challenged the government's striking of two Native-American venirepersons, Lloyd Lacroix and Jamie Cottier, as an alleged violation of the equal-protection component of the Due Process Clause of the Fifth Amendment. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007). This claim is governed by a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008) (internal quotations and alterations omitted).

As the case unfolded at trial, the district court and the parties skipped the first step of the process. After Harding objected to the strikes, the court recognized the prosecutor for a response, and the prosecutor volunteered race-neutral bases for the strikes. The prosecutor did not address whether Harding made a prima facie showing, and the district court made no finding on that point. The district court ultimately determined at step three of the process that Harding had not shown purposeful discrimination. In this situation, the question whether Harding made a prima facie showing is moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991). We review the district court's ultimate finding on purposeful discrimination for clear error, giving considerable deference to the court's assessment of the prosecutor's credibility. *United States v. Pherigo*, 327 F.3d 690, 695-96 (8th Cir. 2003).

The prosecutor gave these reasons for the strikes: He said that Lacroix worked with Harding at Dakota Paneling, where Lacroix was a supervisor, and that Lacroix knew Harding. He stated that Cottier was a registered nurse and was a member of a venire in the recent case of *United States v. High Wolf*. In response to questions from the court, the prosecutor clarified that Cottier had been excused from service in *High Wolf*, and that the prosecutor was drawing on Cottier's responses during voir dire in the past.

The district court found that Lacroix stated during voir dire that he knew Harding and worked at the same plant location, so there was "[n]o problem striking Mr. Lacroix." As to Cottier, the court found:

> There's not sufficient evidence for me to grant the Batson challenge with regard to Ms. Cottier. Counsel for prosecution and defense have a right to strike jurors for any reason or for none as long as it's not based on an impermissible reason, gender, race, and the other factors. But here I don't believe that there's sufficient evidence of any systematic exclusion of Native people or any impermissible jury selection techniques on the part of the government, so I am going to deny the challenge.

Harding argues on appeal that the district court clearly erred in denying his challenge to the strikes. But he makes no argument regarding the strike of Lacroix, and we find no clear error in the district court's finding that there was "no problem" with that strike. That LaCroix knew and worked with Harding was a permissible race-neutral reason to strike him, *United States v. Iron Moccasin*, 878 F.2d 226, 229 (8th Cir. 1989), and Harding mounts no argument to establish that race was the true purpose. Harding himself struck a Native American because the venireperson gave answers suggesting that she would give preference to law enforcement. The mere fact that Lacroix, too, was Native American does not approach the showing necessary to establish clear error by the district court.

-4-

Harding makes a brief argument that the district court erred in allowing the strike of Cottier. His complaint is that there is not "a sufficient record for appellate review" because Cottier said nothing during voir dire, and neither the prosecutor nor the district court relied on her behavior in the courtroom to justify the strike. But a strike need not be premised on a juror's statements or reactions during voir dire. Occupation, cited by the prosecution here, is a permissible reason. *United States v. Velazquez-Rivera*, 366 F.3d 661, 666 (8th Cir. 2004); *Hall v. Luebbers*, 341 F.3d 706, 713 (8th Cir. 2003). A venireperson's answers in prior court sessions known to the prosecutor and to the court, although not detailed in the record here, are also a race-neutral basis for a strike. *See Stenhouse v. Hobbs*, 631 F.3d 888, 895 (8th Cir. 2011). These facially valid explanations shifted the burden to Harding to show that the prosecution's stated reasons were a pretext for race. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). The prosecutor's justifications here were not implausible or fantastic; indeed, the prosecutor in *Velazquez-Rivera* stated that he struck a Hispanic juror because "she was a nurse and he followed a rule of striking teachers and nurses." 366 F.3d at 666. Merely establishing that the government's strike eliminated the remaining self-identified Native American does not compel a finding of clear error. For all we know, the prosecution would have been happy to seat the Native American whom Harding struck, and the government did not strike a fourth venireperson who identified as non-Caucasian. The district court had an adequate basis to find that there was no purposeful discrimination.

Harding next argues that the district court deprived him of a fair trial by refusing either to appoint counsel for two prosecution witnesses or to advise the witnesses of their Fifth Amendment privilege against self-incrimination. A trial court sometimes will accord these benefits to a witness in order to protect the rights of *the witness*. *E.g.*, *United States v. Rogers*, 549 F.2d 490, 494 (8th Cir. 1976). But a defendant lacks standing to challenge the district court's decision on this matter, because the privilege at issue belongs to the witness, not to the party on trial. *See Rogers v. United States*, 340 U.S. 367, 371 (1951); *United States v. Skolek*, 474 F.2d

582, 584 (10th Cir. 1973) (per curiam). Harding's disagreement with the district court's exercise of discretion *vis-à-vis* the witnesses therefore affords him no basis to challenge the conviction.

Harding's third point on appeal is that the district court erred by denying his motions for a mistrial and a continuance. The mistrial motions were based on two alleged violations of the government's duty to disclose exculpatory information under the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent decisions. The first time, Harding argued that the government failed to inform him that Brown, the security guard at the Oasis Lounge, would testify that he saw Harding lean over and rummage through the glove compartment of the vehicle from which the Glock firearm was stolen. Brown did not convey this information in his statement to police on the night of the theft. When Harding objected at trial, the prosecution explained that Brown had told the government during a lunch break that he saw Harding lean toward the glove compartment, but that prosecutors were unable to contact Harding's counsel during the recess. The government represented that Brown's testimony about Harding rummaging through the compartment was a surprise. The court denied the motion for mistrial, finding that there was no intentional government misconduct. There was no error in denying a mistrial. The government cannot disclose information of which it is unaware, and Brown's testimony inculpated Harding and was disclosed during trial, so there was no *Brady* violation. *See United States v. Anwar*, 428 F.3d 1102, 1112 (8th Cir. 2005).

The second motion came in response to Macpherson's testimony. One objection was that Macpherson testified unexpectedly that Harding had pulled the Glock firearm out of the Menards bag and showed it to Macpherson on the day of the arrest. The district court denied Harding's motion for mistrial on this ground. The court found that the government did not know that Macpherson planned to make that statement, and that Harding was not prejudiced because there was nothing that he could have done to prevent the testimony. Again, because this evidence implicated

-6-

Harding and did not exculpate him, the *Brady* rule is not applicable. Harding had an opportunity to impeach Macpherson based on his failure to mention this incriminating evidence in previous interviews.

Harding complains separately that the district court should have granted a mistrial or a continuance when Macpherson disclosed in trial testimony that he was a paranoid schizophrenic. The court found that the government was not aware of this diagnosis before trial, so there was no discovery violation that warranted a mistrial.

Harding contends, however, that the court should have continued the trial in light of the surprise so that he could seek Macpherson's mental health records and secure an expert to testify about the effect of paranoid schizophrenia on a witness's ability to perceive and recall events. Harding had an inkling before trial that Macpherson had a mental health issue, but Macpherson did not acknowledge mental health problems in a pretrial interview, and Harding's counsel felt that she had no basis to obtain Macpherson's medical records.

The court declined to grant a continuance for several reasons. The court observed that "we have all kinds of people with paranoid schizophrenia who function in society, so there isn't even enough for me to say that there's any reasonable likelihood that his credibility would be affected." There was no evidence that Macpherson was "a treated schizophrenic," and he appeared in court as "a perfectly straight-forward adult male standing up to direct and cross-examination about matters in which he was involved." The court also remarked that witness Lynda Ruud corroborated Macpherson's testimony that Harding possessed the firearm.

The district court has wide discretion in managing a trial, and we will reverse based on a refusal to continue the proceedings only when there is an abuse of discretion that prejudiced the defendant. *United States v. Redd*, 318 F.3d 778, 782 (8th Cir. 2003). The district court's decision here was within the range of reasonable

exercises of discretion.  Although Macpherson did not disclose his paranoid schizophrenia until trial, Harding was able to cross-examine him about the illness and to suggest to the jury that the illness affected Macpherson's credibility.  The potential that further investigation would have produced information that materially affected the jury's perception of Macpherson's credibility was too speculative to demand a continuance.  And Macpherson's testimony about Harding's possession of a gun was corroborated by Ruud, so the case did not rise or fall on whether the jury believed Macpherson alone.  For these reasons, we conclude that Harding has not demonstrated an abuse of discretion that caused him prejudice.

The judgment of the district court is affirmed.

_____