# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-2648

_____

United States of America,        *
                                      *

    Plaintiff - Appellee,    *
                                      * Appeal from the United States

     v.                         * District Court for the
                                      * District of Minnesota.

Andre Lamont Brown,         *
                                      *

    Defendant - Appellant.    *

_____

Submitted:  December 10, 1996

Filed:  April 7, 1997

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

    Andre Lamont Brown appeals from his conviction of possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1994). He contends his conviction should be reversed because the district court[1] erred in admitting hearsay and opinion testimony. He also argues that reversible error occurred based on the district court's exclusion of evidence about Minnesota state law. We affirm.

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

The Minneapolis Narcotics Unit received information from a confidential informant that an individual was distributing large quantities of crack cocaine in the Minneapolis-St. Paul area, and that a delivery was planned at an auto body shop on November 15, 1995. The individual was described as a young black man in his early twenties, who went by the nickname "Dre", and who drove a black Cutlass-type car. Brown used the nickname "Dre".

Based on this information, eight to ten police officers set up surveillance near the auto body shop on November 15. At about 4:30 p.m., the officers saw Brown arrive at the body shop in a black or dark-colored Monte Carlo. Brown got out of the car, went into the body shop and, after about thirty minutes, returned to the car. From there, Brown drove to downtown Minneapolis, where he picked up a woman, later identified as Demetra Hayes. The officers followed Brown and Hayes to Robbinsdale, where Brown stopped at a house. Brown got out of the car, leaving the engine running and Hayes in the car while he went inside the house for a minute or two. Officer Holland, a narcotics investigator, testified that Brown's actions were consistent with a drug delivery.

Brown and Hayes then went to a Wal-Mart and a Target store where they purchased some household items before going to the Heritage Hills apartment complex. Holland testified that she heard one of the surveillance officers state over the radio that Brown and Hayes got out of the car and Brown used a key to enter the security door of the apartment complex. Holland further testified that one of the surveillance officers radioed that she saw the lights turn on in a third-floor apartment, saw Brown and Hayes walking around the apartment, and saw Brown go out onto the balcony to use a cellular phone.

Brown and Hayes left the apartment about 10:40 p.m., and Brown dropped Hayes off at a house in North Minneapolis. After driving a few more blocks, Brown pulled over to the curb, shut off his lights, and lost the police surveillance. A short time later, the officers were able to find Brown, who was driving with his lights off. The officers stopped Brown's car. Holland testified that Brown's actions were consistent with someone engaging in counter-surveillance activities and with "someone throwing something out the window and trying to get rid of it and then eventually coming back to retrieve it."

Holland arrested Brown and advised him of his <u>Miranda</u> rights. Holland questioned Brown and testified that Brown was "very evasive [about] where he had come from and where he was going to." Brown initially told Holland that he had not been to the apartment, but when Holland told him that she had seen him there, he admitted that he had been there. Another officer at the scene of the arrest, Sergeant Hauglid, testified that Brown did not refer to the apartment until told that he had been seen there. Hauglid testified that Brown stated that he had been to the apartment, but Brown denied that it was his apartment. Brown explained that the apartment belonged to Melva Conner, and that she had given him a key to the apartment. Holland testified that she had a "gut feeling" that the Heritage Hills apartment was probably a "stash house."

Holland testified that Brown orally consented to the search of the Heritage Hills apartment, and signed a consent form. The officers and Brown then returned to the apartment. Brown's key was used to open the apartment. The apartment had no furniture, and the officers found three packages of crack cocaine inside the kitchen cupboards and a scale on top of a kitchen cupboard.

Holland testified that she interviewed Brown outside the presence of the other officers for "privacy purposes."  Holland testified that Brown told her that he had brought the drugs back from Chicago two days before and that he had not yet sold any.  Brown testified that he never admitted to Holland that the drugs were his, that he was selling the drugs, or that he had brought drugs back from Chicago.  There was no tape recording or written statement of Brown's admission.  Brown also consented to the search of his apartment.  Officers retrieved $3,000 in cash and three cellular telephones during the search of his apartment.

Brown was convicted, and he now appeals.

## I.

Brown's chief complaint on appeal is with the district court's admission of hearsay and opinion testimony.  In particular, Brown contends that the court erred in allowing Holland to testify:  that a confidential informant told her that an individual named "Dre" was distributing large amounts of crack cocaine; that she had learned from the apartment manager that Brown had been to the apartment before; and that she believed that Brown had "control" of the apartment.  He also argues that it was error to allow Holland to testify that someone told her that the items purchased at Wal-Mart and Target, "were the tastes of Mr. Brown."  Brown contends that the evidence was inadmissible hearsay under the Federal Rules of Evidence, and that its admission violated his right to confrontation under the Sixth Amendment.

We give substantial deference to the district court's evidentiary rulings and will find error only if the district court clearly abused its discretion.  See  United States v. King, 36 F.3d

-4-

728, 732 (8th Cir. 1994), cert. denied, 115 S. Ct. 954 (1995). Even if the district court erred in admitting evidence, we will not reverse if the error is harmless.[2] See United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).

In United States v. Azure, 845 F.2d 1503 (8th Cir. 1988), a victim of sexual abuse identified the perpetrator to a social worker. See id. at 1506. At trial, the social worker testified that the victim identified the defendant as the person who had sexually abused her. See id. The government argued that the social worker's testimony was not hearsay because it was not offered to prove that the defendant was the perpetrator of the crime, but to explain why the investigation focused on the defendant. See id. at 1507. We rejected the government's argument, holding that the social worker's testimony was only relevant to proving that the defendant was the perpetrator of the crime. See id. We ruled, however, that the error in admitting the evidence was harmless. See id.

The testimony here, unlike Azure, provided the jury with background information as to why the police began their investigation and set up their surveillance. See, e.g., King, 36 F.3d at 732. We are troubled, however, with the portion of Holland's testimony which explained that an informant identified "Dre" as a person selling cocaine in the Minneapolis area. Later testimony at trial established that Brown used the nickname "Dre." Thus, this testimony was only relevant to proving that Brown was selling cocaine in the Minneapolis area. See Azure, 845 F.2d at 1507. Nevertheless, to the extent this testimony was hearsay, we

---

[2]Because Brown alleges a violation of his right to confrontation under the Sixth Amendment, we apply the harmless error standard from Chapman v. California, 386 U.S. 18, 24-25 (1967).

believe its admission was harmless.[3]  There was substantial evidence linking Brown to the cocaine found at the apartment.  Furthermore, the court specifically instructed the jury to consider the evidence only for the limited purpose of explaining why the police began surveillance, and that they should not consider the evidence for any other purpose, including to decide whether Brown was guilty or not guilty.

Nor do we believe that Holland's testimony that the apartment manager told her that Brown had been to the Heritage Hills apartment before November 15 constituted inadmissible hearsay.  During the cross-examination of Holland, Brown's counsel challenged Brown's authority to consent to the apartment search.  Counsel attempted to show that Holland could not reasonably believe that Brown had the authority to consent to the search. In response to this question, Holland testified on redirect examination that the apartment manager had told her that Brown had been to the apartment before November 15.  In overruling defense counsel's objection, the district court advised the jury that the statement was "not submitted for the truth of the assertion, but rather for the action of the witness." Holland's testimony that the apartment manager told her that Brown had been to the apartment before was offered to explain the basis for Holland's belief that Brown could consent to the search of the apartment, not to prove that Brown actually had been to the apartment before.  The testimony was not inadmissible hearsay. See Fed. R. Evid. 801(c).  Moreover, Brown testified that he had been to the apartment at least one other time before

_____

[3]Brown cites several cases from other circuits that we find distinguishable on their facts, as the hearsay testimony in those cases was much more extensive.  See, e.g., United States v. Check, 582 F.2d 668, 678-79 (2d Cir. 1978) (officer's extensive testimony about what an informant told him served as "a transparent conduit for the introduction of inadmissible hearsay").

his arrest, so even assuming there was error in admitting the testimony, any error was harmless beyond a reasonable doubt.  <u>See</u> <u>King</u>, 36 F.3d at 732.

Similarly, the district court did not abuse its discretion by allowing Holland to testify that she believed Brown had control over the apartment because he had the keys to the apartment and because other surveillance officers told her that they had seen Brown open the apartment's security door and walk around inside the apartment.  This testimony was not inadmissible hearsay; it was not offered for the purpose of proving that Brown actually had control of the apartment, but to explain the reasonableness of Holland's belief that Brown could consent to the search.

Likewise, the court did not abuse its discretion in admitting Holland's testimony that she had been told that the items purchased at Wal-Mart and Target were the "tastes" of Brown.  First, Brown did not object to the testimony.  Second, the testimony came in response to the question of whether Holland had personal knowledge about whether Brown had bought the household items for himself or someone else.  The testimony was not offered for the purpose of proving that Brown actually purchased the items for himself, but rather, to explain the basis for Holland's belief that Brown had control of the apartment.

The district court did not abuse its discretion in admitting the alleged hearsay testimony.

Next, Brown complains that the district court abused its discretion in admitting opinion or expert testimony. In particular, Brown takes issue with Holland's testimony that she believed the Heritage Hills apartment was a stash house for drugs, and that Brown's stop in Robbinsdale was consistent with that of a drug delivery. In addition, Brown objects to the testimony of Holland and Hauglid that Brown's actions just before his arrest were consistent with that of someone engaging in counter-surveillance activities and attempting to destroy evidence. Brown also complains about Holland's testimony that she believed Brown had control over the apartment. Brown contends that these opinions were improper under Federal Rules of Evidence 701 and 702, and constituted an improper comment on the evidence.

A district court's decision on whether to admit opinion and expert testimony is reviewed for a clear abuse of discretion. See <u>United States v. Parker</u>, 32 F.3d 395, 400 (8th Cir. 1994). If we determine that the testimony was improper, we will reverse only if there is a significant possibility that the testimony had a substantial impact on the jury. See <u>United States v. Delpit</u>, 94 F.3d 1134, 1145 (8th Cir. 1996).

"A district court has discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." <u>United States v. Boykin</u>, 986 F.2d 270, 275 (8th Cir.), <u>cert. denied</u>, 510 U.S. 888 (1993) (quoting <u>United States v. White</u>, 890 F.2d 1012, 1014 (8th Cir. 1989), <u>cert. denied</u>, 497 U.S. 1010 (1990)); <u>see</u> <u>Delpit</u>, 94 F.3d at 1144-45. In addition, a court can allow opinion testimony if the

expert's specialized knowledge is helpful to the jury to understand the evidence or determine a fact in issue, even if the opinion embraces an ultimate issue to be decided by the jury. See Boykin, 986 F.2d at 275; see also United States v. Garcia, 86 F.3d 394, 400 (5th Cir. 1996), cert. denied, 117 S. Ct. 752 (1997), (allowing agents' testimony that large drug trafficking organizations commonly use "car swaps," "stash houses" and conduct "heat runs").

Thus, we have no trouble concluding that the district court did not abuse its discretion in admitting Holland's testimony that she believed the Heritage Hills apartment was a stash house and that she believed Brown's actions were consistent with someone engaging in a drug delivery and counter-surveillance activities. The testimony helped the jury to understand why Holland suspected the presence of drugs in the Heritage Hills apartment, and to understand the significance of Brown's activities while under surveillance.

Similarly, we reject Brown's assertion that the testimony was improper because the officers were not qualified to render expert opinions. Both officers were trained, experienced narcotics investigators, and they qualified as experts whose opinions were helpful to the jury. See, e.g., Delpit, 94 F.3d at 1145. We also point out that the district court instructed the jury that it was not bound by the opinion of any expert, thus limiting the possibility that any improper opinion testimony had a substantial impact on the jury. See id.; United States v. Daniels, 723 F.2d 31, 33 (8th Cir. 1983) (per curiam).

The district court did not abuse its discretion in admitting opinion or expert testimony.

Finally, Brown argues that the district court impermissibly limited his cross-examination of Holland regarding her knowledge of a Minnesota Supreme Court decision, State v. Scales, 518 N.W.2d 587 (Minn. 1994). Scales requires law enforcement officers to electronically record custodial interrogation when questioning occurs at a police station, and otherwise where feasible. Id. at 592. Brown contends that he should have been allowed to question Holland about the Scales decision in order to show bias and attack her credibility. The district court refused to allow defense counsel to question Holland about the Scales decision on the ground that it was a state law which did not apply to a federal proceeding. Brown contends that the court's refusal to allow this line of questioning violated his right to confront witnesses.

Absent a clear abuse of discretion and a showing of prejudice, we will not reverse a district court's ruling limiting cross-examination of a witness on the basis that it impermissibly infringed on the defendant's right of confrontation. See United States v. Willis, 997 F.2d 407, 415 (8th Cir. 1993), cert. denied, 510 U.S. 1050 (1994). "The Confrontation Clause of the Sixth Amendment guarantees to a defendant the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias." Id. Nevertheless, "[t]he Confrontation Clause . . . does not prevent a trial judge from placing limits on defense counsel's cross-examination of government witnesses." Id. The district court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant." Id. (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  A critical factor in determining whether a defendant's right of confrontation has been violated is whether the defendant had other ways to obtain the effect that the excluded examination would have allegedly established.  See United States v. Warfield, 97 F.3d 1014, 1024 (8th Cir. 1996), cert. denied, 117 S. Ct. 1119 (1997).

Here, defense counsel had ample opportunity to discredit Holland's testimony, even though the court prevented the defense from specifically bringing up the Scales decision.  Indeed, Brown's counsel asked Holland whether she tape-recorded or had Brown sign a written confession.  Counsel further asked Holland if anyone else was present when Brown confessed and whether she ordinarily interviewed suspects alone.  Counsel asked Holland if she had a tape recorder, where it was located, and how long it would have taken for Holland to get the recorder from her office.  Thus, the district court allowed defense counsel to thoroughly cross-examine Holland about her interview with Brown and Brown's confession.  The court did not abuse its discretion by refusing to allow defense counsel to specifically question Holland about the Scales decision.

The court did not impermissibly limit Brown's cross- examination.

We affirm Brown's conviction.

-11-

A true copy.


        Attest:


            CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.