# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3189

_____

United States of America,             *
                                       *
            Plaintiff-Appellee,        *
                                       *
      v.                               *
                                       *
Alberto Alaniz, Jr., also known as Betin, *
                                       *
            Defendant-Appellant.       *

_____

No. 97-3299

Appeals from the United States District Court for the Western District of Missouri.

_____

United States of America,             *
                                       *
            Plaintiff-Appellee,        *
                                       *
      v.                               *
                                       *
Alejandro Alaniz, also known as Alex, *
                                       *
            Defendant-Appellant.       *

_____

_____

No. 97-3300
_____

| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Alberto Alaniz, Jr., also known as Betin, | * |
| | * |
| Defendant-Appellant. | * |

_____

No. 97-3395
_____

| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Alberto Reyna Alaniz, also known as | * |
| Beta, also known as Beto, | * |
| | * |
| Defendant-Appellant. | * |

_____

_____

97-3604

_____

| | |
|---|---|
| United States of America, | * |
| Plaintiff-Appellee, | * |
| | * |
| | * |
| v. | * |
| | * |
| | * |
| Lonnie Henry, | * |
| | * |
| | * |
| Defendant-Appellant. | * |
| | * |


_____

97-3605

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Nick Cuevas, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: April 14, 1998
Filed: June 24, 1998

_____

Before BOWMAN, Chief Judge,[1] McMILLIAN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Alberto Reyna Alaniz, Alejandro Alaniz, Alberto Alaniz, Jr., Nick Cuevas, and Lonnie Henry were all convicted of conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 846. In addition Alejandro Alaniz, Alberto Alaniz, Jr., and Lonnie Henry were convicted of criminal forfeiture, 21 U.S.C. § 853; Alberto Alaniz, Jr. was convicted of distribution of marijuana, 21 U.S.C. § 841; and Alberto Reyna Alaniz and Alejandro Alaniz were convicted of aiding and abetting the distribution of marijuana, 21 U.S.C. § 841. They appeal their convictions and the sentences imposed by the district court.[2] We affirm.

**I.**

Evidence at trial indicated that in late 1993 appellants were engaged in the business of distributing marijuana. Under the supervision of Alberto Reyna Alaniz (Alberto) and the day to day direction of Alejandro Alaniz (Alejandro) marijuana was obtained, packaged, and distributed for sale. Marijuana was purchased from suppliers in Mexico and transported by couriers affiliated with the conspiracy from various points in south Texas to appellants and their affiliates in Kansas City, Missouri. Once the marijuana arrived in Kansas City it was stored at several safe houses around the city where it was weighed and repackaged for distribution under the supervision of Alberto, Alejandro, and Alberto Alaniz, Jr. (Alberto, Jr.). The marijuana was then sold on the

_____

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

street through a system of distributors including Lonnie Henry, Bryan Jones, and others.

The conspiracy handled a large amount of marijuana during its operation. Between October 1993 and September 1994 over 1,000 pounds of marijuana was transported to Kansas City from Fort Worth and an additional 600 pounds from Houston. Another 1,500 to 2,000 pounds was distributed between February and July 1995.

Nick Cuevas put Alejandro in contact with a supplier of methamphetamine, and the conspirators began to market it as well, using many of the same shipping channels and procedures developed for marijuana. One of the couriers, Roel Cantu, was stopped by law enforcement agents at the Kansas City airport who discovered he was carrying methamphetamine.

The conspiracy began to unravel when Sharon Hughes decided to cooperate with government officials. Sharon Hughes was the widow of T.B. Hughes who had owed Alberto money for drugs, and she was selling marijuana to pay off his debts. She allowed her phone conversations with members of the conspiracy to be recorded and wore a recording device on her person. The investigation continued and expanded until sufficient evidence was developed, and the members of the conspiracy were arrested.

Lonnie Henry and Nick Cuevas pled guilty to the charges against them, and the three members of the Alaniz family went to trial and were found guilty on all counts. Alberto was sentenced to 250 months for conspiracy with a concurrent term of 120 months for aiding and abetting. Alejandro received a life sentence on the conspiracy count and concurrent terms of 120 months on two aiding and abetting counts. Alberto, Jr. was sentenced to 240 months on the conspiracy count with a concurrent term of 120 months on the distribution count. Henry was sentenced to 76 months, and Cuevas to 168 months.

## II.

The Alaniz defendants attack their convictions on a variety of grounds, some of which they all join in and others which are raised singly. These grounds include sufficiency of the evidence, improper forfeiture, evidentiary rulings by the district court, and restrictions placed on cross examination and the time for closing argument.[3]

## A.

Alberto, Jr. argues that there was insufficient evidence to support his conviction for conspiracy to possess with intent to distribute marijuana. The conviction should be upheld unless the evidence viewed in the light most favorable to the verdict could not support a finding that he entered into an agreement with one or more individuals to possess marijuana with the intent to distribute it. U.S. v. Bascope-Zurita, 68 F.3d 1057, 1060 (8th Cir. 1995). He does not dispute that a conspiracy existed between October 1993 and September 1995, but he claims that he was not a knowing participant. Once the existence of an agreement is established, however, only slight evidence linking a member to the conspiracy is required. U.S. v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996).

Several participants in the conspiracy testified about the involvement of Alberto, Jr.. Sharon Hughes testified that beginning in the summer of 1994, Alberto, Jr. obtained marijuana from one of the safehouses and from her late husband. William

---

[3]Other grounds are raised in supplemental pro se briefs submitted by Alberto and Alejandro. They complain the district court should have held a hearing about a brief courthouse encounter between a juror and a government witness and the prosecutor's closing argument. Pro se submissions by parties represented by counsel are ordinarily not considered. U.S. v. Marx, 991 F.2d 1369, 1375 (8th Cir. 1993). Moreover, objections to these points were not raised at trial and no plain error has been shown. Fed. R. Crim. P. 52(b); U.S. v. Olano, 113 S.Ct. 1770, 1776 (1993).

Turner testified that Alberto, Jr. solicited him to purchase marijuana and began selling to him on a regular basis beginning in late 1994. He also testified that when a dispute about payment arose, Alejandro and Alberto came with Alberto, Jr. to see him and threaten him with violence but that they eventually reached an agreement for him to pay off the debt. Bryan Jones testified that Alberto, Jr. was a primary distributor for the conspiracy, that he helped weigh and package the drugs for resale, and that he distributed an average of fifty pounds of marijuana per week. Cybil Hudson testified that Alberto, Jr. stored both marijuana and methamphetamine at the safehouses involved in the conspiracy, that he transported and distributed both drugs for the conspiracy, and that she once saw him separating a shipment of over 1,000 pounds of marijuana into quantities suitable for storage and distribution. This was sufficient evidence for the jury to find that Alberto, Jr., knowingly participated in the conspiracy to possess and distribute marijuana, and his conviction should be affirmed. Bascope-Zurita, 68 F.3d at 1060.

Alberto, Jr., also claims that the prosecution impermissibly varied from the conspiracy charged in the indictment by introducing evidence of a separate conspiracy to distribute methamphetamine. Since no objection was raised to the failure to give a jury instruction on multiple conspiracies, we review only for plain error. Fed. R. Crim. P. 52(b); Slaughter, 128 F.3d at 629. The evidence at trial indicated that methamphetamine was distributed by the same individuals involved in the marijuana conspiracy through the same channels and procedures. It was part of the activities of the conspirators who primarily distributed marijuana. Rather than being a distinct and separate conspiracy, the methamphetamine transactions were part of the operation of the marijuana conspiracy, U.S. v. Slaughter, 128 F.3d 623, 630 (8th Cir. 1997), and it was not plain error to admit this evidence.

Another claim of insufficiency raised by Alberto, Jr., is that evidence was lacking to link the $2000 federal agents seized from him to the criminal activities of the conspiracy. The money was found in a ski jacket in a closet at one of the safehouses

affiliated with the conspiracy and was folded in a manner consistent with drug trafficking. The closet also contained a letter addressed to Alberto, Jr. who was living at the safehouse at the time and had used it as a base to distribute drugs. Based on this evidence the jury could reasonably find that the money resulted from the criminal conspiracy, and the judgment of forfeiture should be affirmed. U.S. v. Wojcik, 60 F.3d 431, 434 (8th Cir. 1995).

**B.**

Both Alejandro and Alberto, Jr. object that evidence of their earlier drug convictions and of uncharged methamphetamine violations was improperly admitted. The government introduced certified copies of judgments of conviction against Alejandro for conspiracy with intent to distribute cocaine and against Alberto, Jr. for felony possession of marijuana. Evidence was also introduced that both men used the machinery of the conspiracy to deal methamphetamine contemporaneously with the marijuana distribution. The prosecutor provided notice of intent to use this evidence prior to trial.

Alejandro argues that evidence of his 1989 conspiracy conviction should not have been introduced because it involved cocaine, it was too remote in time, and its admission violated Rule 403. Alejandro's prior conspiracy conviction involved the sale and transport of both cocaine and marijuana in south Texas. This earlier activity in moving drugs for sale through shipment points in Texas was sufficiently similar to the present conspiracy to be probative of plan and intent under Rule 404(b). Fed. R. Evid. 404(b); U.S. v. Johnson, 977 F.2d 457, 458 (8th Cir. 1992). The prior conviction was not too remote in time because Alejandro was incarcerated for almost the whole of the intervening period between that conviction and the indictment in this case. The jury was instructed that the prior conviction could only be considered on the issue of whether Alejandro intentionally participated in the charged conspiracy, and the district

court did not abuse its discretion by admitting it. Fed. R. Evid. 403; <u>U.S. v. Mihm</u>, 13 F.2d 1200, 1204 (8th Cir. 1994).

The prior conviction offered against Alberto, Jr. was a 1993 conviction for felony possession of marijuana, not for distribution. Alberto, Jr. placed his intent in issue by arguing that he was not a knowing and intentional participant in the conspiracy so the conviction was offered for a permissible purpose under Rule 404(b). The court instructed the jury that this evidence was applicable only on the issue of intent and not to demonstrate participation in the charged conspiracy. Any error in admission of the evidence of felony possession was harmless because of the strength of the rest of the case against Alberto, Jr. <u>U.S. v. Mejia-Uribe</u>, 75 F.3d 395, 398-99 (8th Cir. 1996).

Both Alberto, Jr. and Alejandro also object under Rules 403 and 404(b) to testimony by Sharon Hughes that during the course of the conspiracy she was given methamphetamine to distribute in addition to marijuana. Her testimony showed methamphetamine was an integral part of the conspiracy's distribution system, and it was therefore not Rule 404(b) evidence of other crimes. <u>U.S. v. Luna</u>, 94 F.3d 1156, 1162 (8th Cir. 1996). Even if Rule 404(b) applied, it would be admissible as proof of plan, knowledge, and intent, and its probative value was not substantially outweighed by any prejudicial effect. Fed. R. Evid. 403.

## C.

The Alaniz defendants argue that the district court erred in restricting their cross examination of several prosecution witnesses. They say that they were improperly prevented from asking Roel Cantu about an incident during his work as a jailer in Texas when he allegedly "turned his head" to allow several inmates to beat another. The district court did not err in excluding this inquiry into a specific instance of conduct. Fed. R. Evid. 608(b). They also complain that they were unable to question Bryan Jones and William Turner, Jr. about the quantity of drugs mentioned in their plea

agreements. These quantities were lower than the amounts they testified about at trial, and defense counsel wanted to impeach their testimony. The court excluded the questions on the basis that "it's not uncommon to compromise coming into plea agreements and I think it would mislead the jury." Both Jones and Turner were cross examined extensively on the fact that they had entered plea agreements and would receive favorable sentencing recommendations for their cooperation. The district court did not abuse its discretion in limiting the questioning in light of the entire record. U.S. v. Brown, 110 F.3d 605, 611 (8th Cir. 1997); Delaware v. Van Arsdall, 106 S.Ct. 1431, 1438 (1986). Finally, after Sharon Hughes admitted that she had a substance abuse problem and that she was taking anti-depressant medication, counsel wanted to ask whether she had "ever been on any medication or undergone any kind of treatment for substance abuse?" because "there's some things that lawyers just have to shoot in the dark on if she has a history." The court did not abuse its discretion in barring this repetitive question. Brown, 110 F.3d at 611.

Alberto argues that he was unfairly limited to twelve minutes for his closing argument which prevented fully pointing out the deficiencies in the testimony of the government witnesses. When the court asked how much time was needed for closings, the government requested thirty minutes, Alberto, Jr. and Alejandro each requested ten minutes, and counsel for Alberto initially requested thirty minutes but amended it to twenty. Counsel said "I would like to have my client feel I'm doing something and I don't think twenty minutes is that far out of line." The court allowed thirty-six minutes for each side, leaving up to sixteen minutes for Alberto. The record demonstrates that the several defendants divided the burden of discrediting the government's case during closing argument by attacking different points. The equal time period granted the government to build its case and the defendants to contest it was sufficient opportunity to explore the evidence important to resolution of the issues. The district court did not abuse its discretion in setting the time for closing argument based on its assessment of the complexity of issues and evidence involved. U.S. v. Bednar, 728 F.2d 1043, 1048 (8th Cir. 1984).

## III.

All appellants except Alberto Reyna Alaniz raise challenges to their sentences. Alberto, Jr. attacks the increase in his sentencing range because of his prior drug convictions, Alejandro contends that the court did not make adequate sentencing findings, Henry objects to the denial of an acceptance of responsibility reduction, and Cuevas alleges he was sentenced on an incorrect drug quantity and should have received reductions for a minor or minimal role and for acceptance of responsibility.

Alberto, Jr. attacks the increase of his sentencing range under 21 U.S.C. § 841(b)(1)(A) which provides for more serious penalties when a drug offender has prior convictions involving controlled substances. He asserts that the government did not make an adequate showing to trigger the enhancement and that the statute is ambiguous so the rule of lenity prevents him from receiving a higher sentence under it. Under the statutory scheme the government may file an information to establish prior drug convictions if the defendant "either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed." 21 U.S.C. § 851(a)(2). Alberto, Jr. argues that the statute is unclear whether the opportunity for prosecution by indictment must be available for the prior offenses or for the charge for which he is currently being sentenced. He asserts that the government has not established that his prior convictions were pursuant to indictment. We have previously ruled that § 851 is not ambiguous and that prosecution by indictment need only be available for the current offense. U.S. v. Trevino-Rodriguez, 994 F.2d 533, 536 (8th Cir. 1993). Alberto, Jr. was prosecuted by indictment in this case, and the information detailing his prior drug offenses was properly filed so his argument is without merit. The district court did not err in sentencing him using the higher range available under § 841(b)(1)(A).

Alejandro Alaniz argues that the district court did not make sufficient findings to support the quantity of drugs on which it based his sentence and the enhancements imposed for role in the offense, U.S.S.G. § 3B1.1(b), obstruction of justice, U.S.S.G. § 3C1.1, and use of a firearm in the offense, U.S.S.G. § 2D1.1(b)(1). The district court must make sentencing findings sufficient to permit meaningful appellate review. U.S. v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994). Here the district court relied on the evidence produced at trial and the sentencing hearing to overrule Alejandro's objections to the presentence report and to adopt its findings. This included evidence that in March 1995 Alejandro assumed the leadership role in the conspiracy previously held by Alberto Alaniz, that he threatened to kill Roel Cantu if he cooperated with prosecutors or refused to "take the rap" himself, that Alejandro kept a gun with him during drug transactions at his house, and that certain amounts of marijuana were regularly shipped and handled by Alejandro and his co-conspirators. The district court's statement that the quantity determinations and sentence enhancements were based on the trial testimony and evidence presented at the sentencing hearing provide a sufficient basis for adequate appellate review. Fetlow, 21 F.3d at 249. The court also specifically noted that a preponderance of the evidence demonstrated that the objections raised were without merit.

Lonnie Henry contends that the district court erred in denying him a three level reduction for acceptance of responsibility. Henry pled guilty to conspiracy to possess with intent to distribute marijuana and agreed to testify for the government in the trial of the Alaniz family members. At the time of trial Henry was in custody, and his wife gave his attorney a suit for him to wear to testify. A courtroom deputy discovered a package of marijuana in the suit, and the government chose not to call Henry. He denies knowing that the marijuana was there and argues that there was no evidence linking him to it. We need not consider his claims of error because his sentence of seventy-six months was less than the applicable guideline range of seventy-seven to ninety-six months if he had been granted the acceptance of responsibility. U.S. v. Williams, 97 F.3d 240, 243 (8th Cir. 1996).

The district court found Nick Cuevas responsible for 710 grams of methamphetamine for sentencing purposes, but he says there was no evidence linking him to these drugs and there were not sufficient findings. Considerable evidence linked Cuevas to the 710 grams that were found on Roel Cantu in the Kansas City airport. There was evidence at his sentencing hearing that Cuevas had facilitated the acquisition of the methamphetamine by giving Alejandro Alaniz the name of a supplier and giving Cantu directions on how to contact him. There was also a taped conversation in which Cuevas asked Cantu if he had contacted the supplier. Testimony by Bryan Jones indicated that Cuevas occasionally supplied him with methamphetamine and that Cuevas had access to kilogram quantities. Michael Regan testified that Cuevas had delivered the 710 grams of methamphetamine which Cantu had when he was arrested. Furthermore, Cuevas could be sentenced as a participant in a joint criminal activity for any acts that he aided, abetted, or procured, U.S.S.G. § 1B1.3(a)(1)(A), or any acts by other members of the enterprise that were in its furtherance and reasonably foreseeable to him. U.S.S.G. § 1B1.3(a)(1)(B); U.S. v. Strange, 102 F.3d 356, 359 (8th Cir. 1996). The evidence at sentencing demonstrated by a preponderance of the evidence both that Cuevas directly aided in the acquisition of this methamphetamine and that its acquisition was reasonably foreseeable to him. U.S. v. Hammer, 3 F.3d 266, 273 (8th Cir. 1993). The court's findings were sufficient, Edwards, 994 F.2d at 423, and use of the evidence for his sentence was proper.

Cuevas argues also that he should have received sentence reductions for minimal or minor role in the conspiracy and acceptance of responsibility. Cuevas bore the burden of demonstrating his eligibility for the reductions, and we review their denial for clear error. U.S. v. Raymer, 2 F.3d 286, 288 (8th Cir. 1993). The evidence at sentencing showed that Cuevas was important in expanding the conspiracy to include the distribution of methamphetamine. He was not "plainly among the least culpable" or without knowledge of the scope and activities of the conspiracy. U.S.S.G. § 3B1.2, commentary. Because his involvement was not an isolated unsubstantial instance, Cuevas is not entitled to a reduction simply because his culpability was less than some

others involved in the conspiracy.  <u>Raymer</u>, 2 F.3d at 288.  Entry of a guilty plea alone does not entitle Cuevas to acceptance of responsibility because he continued to deny his involvement after there was substantial evidence of his participation.  U.S.S.G. § 3E1.1, commentary (n 3).  Denial of a reduction for acceptance of responsibility can only be reversed if clearly erroneous, <u>U.S. v. Furlow</u>, 980 F.2d 476, 476 (8th Cir. 1992) (en banc), and we find that it was not.

## IV.

After consideration of the claimed errors raised on appeal and a thorough review of the record, we affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.