# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1432

_____

United States of America,

        Plaintiff-Appellee,

v.

Martha Molina, also known as
Martha Molina DeRangel,

        Defendant-Appellant.

Appeals from the United
States District Court for the
District of Minnesota.

_____

No. 98-1433

_____

United States of America,

        Plaintiff-Appellee,

v.

Sergio Rolando Fraga,

        Defendant-Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

United States of America,

      Plaintiff-Appellee,

    v.

Luis Marinae Corona, also known as
Jorge Carrio, Pedro Dajer,
George Carrio,

      Defendant-Appellant.

_____

Submitted:  October 19, 1998
Filed:  April 12, 1999

_____

Before HANSEN, LAY and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury trial, the district court[1] entered judgment convicting Martha Molina, Luis Marinae Corona, and Sergio Rolando Fraga of conspiracy and various cocaine trafficking offenses.  The district court sentenced Molina and Corona each

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

to serve 137 months in prison, and ordered Fraga to serve 78 months in prison.  The defendants appeal their respective convictions and various aspects of their respective sentences.  We affirm.

# I.
# FACTS

On January 2, 1997, a confidential informant told Minneapolis police officer Louis Porras that a woman named Molina and her boyfriend, Fraga, were trafficking in cocaine.  Working undercover, Officer Porras telephoned Molina to arrange a controlled buy at a specified time and location.  After meeting Molina and Fraga at the designated location, Porras purchased one-half ounce of cocaine.  Porras audiotaped the telephone conversation and the controlled buy.

Over the next few days, Porras twice met with Molina and Fraga.  On each separate occasion, Porras purchased one ounce of cocaine for $1,000.  The police videotaped each meeting.

After conducting the controlled buys, Officer Porras and the Minneapolis Police discovered that Molina, Fraga, and Molina's brother, Corona, were associated with an address at 3932 Aldrich Avenue South in Minneapolis.  After ascertaining the address, Minneapolis police asked the United States Post Office and various overnight delivery services to "flag" any mail addressed to 3932 Aldrich Avenue South.  On January 7, 1997, the United States Post Office informed the Minneapolis Police Department that an overnight package addressed to 3932 Aldrich Avenue South was received at a postal station in St. Paul.  The police obtained a warrant to search the package, wherein they discovered one kilogram of cocaine.

The interception of the kilogram of cocaine prompted the police to initiate one final controlled buy with Molina and Fraga.  Officer Porras contacted Molina to

arrange the transaction. Molina and Officer Porras once again conversed over the telephone. Officer Porras once again recorded the conversation. During the recorded conversation, Officer Porras arranged to purchase five ounces of cocaine for $4,500.

Police officers followed Fraga and Corona from 3932 Aldrich Avenue South to a Minneapolis store called Best Buy where Officer Porras surrendered $4,500 in exchange for five ounces of cocaine. Immediately after this exchange, the police arrested Fraga and Corona, and obtained a warrant to search the 3932 Aldrich Avenue South premises. Upon entering and searching the residence, the police discovered 1.4 grams of crack cocaine, packaging material, gram scales, and $5,000 in cash. The police also discovered a handwritten note containing a tracking number that corresponded to the package of cocaine that was intercepted by the police. The note contained only Molina's handwriting. Finally, the police discovered a handgun in Corona's bedroom. Corona was, at that time, a thrice-convicted felon.

The police questioned the trio at the Aldrich Avenue South residence. Although the police maintain that all three admitted they lived at 3932 Aldrich Avenue South, only Fraga admitted responsibility for the cocaine. In fact, Fraga told the police that he alone was responsible for the cocaine transactions and that his co-residents were innocent. Fraga later executed an affidavit in which he again accepted sole responsibility for the cocaine, and asserted that Molina and Corona were mere bystanders.

On March 5, 1997, a federal grand jury returned a six-count superceding indictment charging that Molina, Fraga, and Corona were engaged in a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). In addition, the indictment charged Molina with two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of attempting to possess with intent to distribute one kilogram of cocaine in violation of 21 U.S.C. § 846. The indictment charged Corona with distributing approximately 142 grams of cocaine in violation of 21

U.S.C. § 841(a)(1), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The indictment also charged Fraga with three counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1). Trial commenced on May 27, 1997. At trial, Molina and Corona presented Fraga's innocent bystander assertions to the jury. Fraga even testified that he alone was responsible for the cocaine. The jury, however, returned guilty verdicts against the three defendants on all counts with which they were charged .

At separate hearings on January 13, 1998, the district court sentenced Fraga, Molina, and Corona. Based upon the United States Probation Office's presentence investigation report and the applicable provisions of the United States Sentencing Guidelines, the district court sentenced Fraga to 78 months in prison. In calculating Fraga's sentence, the district court attributed the one kilogram of cocaine to him as relevant conduct and imposed a two-level enhancement for obstruction of justice. With regard to Corona, the district court found that he was a career offender and that his guideline range was 262 to 327 months in prison. The district court found, however, that the Guideline's career offender provision overstated Corona's criminal history. Accordingly, the district court granted Corona's downward departure motion and sentenced him to 137 months in prison. Finally, with regard to Molina, the district court found that she was a leader, organizer or supervisor of criminal activity. The district court also found that she qualified as a career offender. As a career offender, her sentencing range pursuant to the Guidelines was 360 months to life in prison. Again, however, the district court found that the career offender provision overstated the defendant's criminal history. Accordingly, the district court granted Molina's motion for a downward departure and sentenced her to 137 months in prison. All three defendants appeal their convictions. Fraga and Corona also appeal their sentences. The government does not appeal the downward departure given to Molina and Corona.

## II.

# DISCUSSION

## A.
## Admission of Rule 404(b) Evidence

During the trial, the district court permitted the government to introduce Molina's 1988 felony cocaine trafficking convictions and her 1993 misdemeanor conviction for possession of cocaine. Molina challenges the district court's decision to admit such evidence. Fraga challenges the district court's decision to allow the admission of the police officers' recovery of the 1.4 grams of crack cocaine that was discovered in his and Molina's shared bedroom during the January 7, 1997, search of his residence. The recovery of the 1.4 grams was not charged as a count against him in the indictment. Fraga argues that the district court erred when it permitted the jury to consider such evidence.

Federal Rule of Evidence 404(b) prohibits the admission at trial of evidence of an accused individual's prior bad acts if the evidence is offered to show that the accused acted in conformity with her prior bad acts. See Fed. R. Evid. 404(b). Rule 404(b) does permit the admission of an accused individual's prior bad acts if the evidence is offered for a nonpropensity related purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Rule 404(b) is a rule of inclusion that prohibits the admission of evidence only when it is offered solely to prove a defendant's criminal propensity. United States v. Yellow, 18 F.3d 1438, 1441 (8th Cir. 1994).

This court employs a four-factor test for evaluating the admissibility of Rule 404(b) evidence. Under the test, a district court may find that prior bad act evidence is admissible if it is (1) relevant to a material issue, (2) proven by a preponderance of the evidence, (3) greater in probative value than prejudicial effect, and (4) similar in kind and close in time to the offense charged. See United States v. Benitez-Meraz,

6

161 F.3d 1163, 1166 n. 3 (8ᵗʰ Cir. 1998); United States v. Logan, 121 F.3d 1172, 1178 (8ᵗʰ Cir. 1997).  A district court has broad discretion when deciding whether to admit or exclude prior bad act evidence, and this court will disturb a district court's decision only if we find that the evidence has no bearing on the case.  See United States v. Green, 151 F.3d 1111, 1113 (8ᵗʰ Cir. 1998); United States v. Shoffner, 71 F.3d 1429, 1432  (8ᵗʰ Cir. 1995).

At trial, Molina argued that she was merely an innocent bystander during the drug transactions.  Her past convictions were relevant to refute such an assertion.  The convictions demonstrated that she had a working knowledge of the drug trafficking trade, which cast doubt upon her defense that she was Fraga's uninvolved companion.  Any prejudicial effect that might have resulted from the admission of such evidence is outweighed by the probative value gained from directly contradicting Molina's primary defense assertion.  In addition, the past convictions were nearly identical and sufficiently close in time to the offense charged.  Thus, the district court did not abuse its discretion by allowing the admission into evidence of Molina's prior drug convictions.

The district court also did not abuse its discretion by admitting evidence of the 1.4 grams of crack cocaine that was found in the bedroom Fraga shared with Molina.  Molina and Fraga were charged with distributing a mixture or substance containing powder cocaine.  Possession of crack, which is derived from cocaine powder, is relevant to show the defendants' knowledge of cocaine based substances and further discredits Molina's unwitting bystander defense.  The prejudicial effect of admitting the crack is not unfair and it is outweighed by the evidence's probative value.

Although we find no abuse of discretion in the district court's decision to admit the Rule 404(b) evidence, we note that even an opposite finding would not compel a reversal in this case.  Regardless of the Rule 404(b) admission, overwhelming evidence exists to support the jury's verdict.  The jury heard audiotaped conversations

of Molina organizing the specifics of the drug transactions. The jury watched videotapes of Molina and Fraga selling cocaine to Officer Porras, and Fraga admitted to the police that he sold the drugs to Porras. In view of the abundance of evidence in this case, any admission of improper propensity evidence by the trial court is harmless. See United States v. Falls, 117 F.3d 1075, 1077-78 (8th Cir. 1997), cert. denied, 118 S. Ct. 1083 (1998).

## B.
## Admission of Evidence Involving the First Controlled Buy

The indictment in this case charged Molina and Fraga only with drug trafficking offenses related to the second, third, and final controlled buys. The January 2, 1997, controlled buy, where Officer Porras first met Fraga and Molina, was not expressly charged in the indictment, even though it did occur during the time frame alleged in the conspiracy count. During trial, Corona sought to introduce evidence of the January 2, 1997, drug deal. Corona stated that he wished to show that he was present at only one of four controlled buys. Through the introduction of such evidence, Corona ostensibly sought to bolster his innocent bystander defense theory. The district court permitted Corona to introduce limited evidence of the January 2, 1997, controlled buy.

We will disturb a district court's evidentiary decisions only if we find a clear abuse of discretion. See United States v. King, 36 F.3d 728, 732 (8th Cir. 1994), cert. denied, 513 U.S. 1135 (1995). On appeal, Molina and Fraga claim that the admission of the first controlled buy either was impermissible Rule 404(b) evidence or was unfairly prejudicial. Both assertions lack merit.

It is well established that where evidence of another crime is so intertwined with the offense of conviction that proof of one incidentally involves the other or explains the circumstances of the other, it is not extrinsic. United States v. Phelps,

1999 WL 55704, at *8 (8th Cir. Feb. 4, 1999); <u>United States v. Swinton</u>, 75 F.3d 374, 378 (8th Cir. 1996). Such bad acts are not governed by Rule 404(b). <u>Phelps</u>, 1999 WL 55704, at *8.

In this case, the first controlled buy is sufficiently intertwined with the offenses charged to remove it from the purview of Rule 404(b). Officer Porras met Molina and Fraga during the first controlled buy. The meeting provided a basis for his initiation of the subsequent controlled buys. The original meeting also provided the police with a portion of the probable cause that allowed the officers to obtain a warrant to search the package. The first controlled buy is related to the subsequent buys and it helps to explain the basis for the undercover operation. Hence, it is not subject to a Rule 404(b) analysis.

Molina and Fraga argue that even if the first buy is not Rule 404(b) evidence, it is far more prejudicial than probative. We disagree. Federal Rule of Evidence 403 compels district courts to weigh the probative value versus the prejudicial effect of evidence that a party seeks to introduce at trial. <u>See</u> Fed. R. Evid. 403. Under the Rule 403 balancing test, a district court should exclude evidence where the prejudicial effect of admitting such evidence outweighs the evidence's probative value. <u>See</u> <u>Phelps</u>, 1999 WL 55704, at *8.

In the instant case, the evidence of the first buy was sufficiently probative and not unfairly prejudicial to the defendants. The jury heard testimony regarding the other controlled buys, which involved greater quantities of drugs and money. The members of the jury also heard evidence regarding the interception of the kilogram of cocaine. In the context of the entire trial, limited evidence of the first controlled buy cannot be deemed overly prejudicial. Conversely, the first controlled buy was highly probative of Corona's guilt or innocence. As the prejudicial effect of the evidence was not greater than its probative value, the admission of the evidence was proper under Rule 403. <u>See</u> <u>id.</u> Hence, we find no abuse of discretion in the district

9

court's decision to admit Corona's limited evidence of the January 2, 1997, controlled buy.

## C.
### Admission of Expert Testimony

During the trial, the district court permitted the testimony of Minneapolis Police Captain Rocky Fontana . After the district court found that Captain Fontana qualified as an expert witness, see Fed. R. Evid. 702, the police captain testified regarding indicia of the drug trafficking trade such as drug distribution amounts, the use of guns, the use of aliases, and the use of surveillance partners. Molina contends that the admission of such evidence was unduly prejudicial and an improper use of expert testimony. We review the district court's decision to allow expert testimony under an abuse of discretion standard. See General Elec. Co. v. Joiner, 118 S. Ct. 512, 517 (1997); United States v. Brown, 110 F.3d 605, 610 (8th Cir. 1997).

Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter. See Fed. R. Evid. 702. Such a witness is regarded as an expert under the rule. See id. "A district court has discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar." Brown, 110 F.3d at 610 (citations omitted). In deciding whether to permit expert testimony, a district court still must balance the probative value of the testimony versus its possible prejudicial effects. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 1999 WL 152455 (U.S. Mar. 23, 1999), at * 7-*9 (holding that Daubert applies not only to scientific testimony but to all expert testimony).

In this case, we find no abuse of discretion in the decision to permit Fontana's expert testimony. Molina was charged with drug distribution. Fontana's testimony concerned the modus operandi of drug dealers. Such testimony provides a context for the jury. Moreover, the testimony undermined Molina's defense theory. Again, Molina asserted that she was an innocent bystander during Fraga's deals with Officer Porras. Fontana provided detailed testimony as to how drug dealers routinely conduct their drug transactions with a partner. Fontana explained that one person typically sells the drugs while the other person serves as a surveillance monitor. Fontana's testimony undercut Molina's innocent companion argument. Any prejudice that befell Molina as a result of Fontana's testimony was vastly outweighed by the testimony's probative value. Accordingly, we find no abuse of discretion.

## D.
### The Constitutionality of 21 U.S.C. § 841(b)

Fraga and Corona argue that Congress exceeded its authority under the Due Process Clause of the Fifth Amendment to the United States Constitution when it opted to treat drug quantity as a sentencing factor rather than as an element of the offense of conviction. See 21 U.S.C. § 841(b). Fraga, in particular, asserts that the district court's finding that he possessed the one kilogram of cocaine that was intercepted by the police resulted in the imposition of a higher sentence under the guidelines. Fraga contends that drug quantity should be an element of the offense charged, rather than a sentencing factor. Corona joins Fraga's argument.

Without addressing the merits of Fraga and Corona's argument, we note that neither defendant challenged the constitutionality of 21 U.S.C. § 841(b) before the district court. Fraga asserts that he did raise the issue before the district court because he disputed his responsibility for the one kilogram of cocaine. Denying responsibility for the one kilogram of cocaine, however, is not a challenge to the constitutionality of the statute. On the contrary, we find no evidence that either

11

defendant squarely presented a constitutionality argument to the district court. Accordingly, we decline to address Fraga and Corona's challenge to the constitutionality of section 841(b) on appeal. See Sanders v. Brundage, 60 F.3d 484, 486-87 (8th Cir. 1995).

## E.
## The Calculation of Fraga's Base Offense Level

In calculating Fraga's base offense level pursuant to United States Sentencing Guidelines Manual § 2D1.1(a)(3)(Drug Quantity Table)(1995), the district court found that Fraga was responsible for conspiracy to distribute 1,215.5 grams of cocaine powder and possession of 1.4 grams of cocaine base. The cocaine powder calculation included the one kilogram of cocaine that was intercepted by the police en route to Fraga's shared residence. Fraga challenges the inclusion of the one kilogram of cocaine as relevant conduct. See USSG § 1B1.3(a)(1)(B). We review a district court's drug quantity findings under a clearly erroneous standard. See United States v. Jones, 160 F.3d 473, 480 (8th Cir. 1998).

Fraga was convicted of conspiracy to distribute cocaine. See 21 U.S.C. § 846. It is well-established that a member of a conspiracy is responsible for all reasonably foreseeable acts or omissions of others in furtherance of the conspiracy. See Jones, 160 F.3d at 480. A district court may consider such reasonably foreseeable acts or omissions when imposing a sentence. See USSG § 1B1.3(a)(1)(B). When the objective of the conspiracy is to distribute quantities of drugs, the government must show that the drug quantities fell within the scope of the criminal activity jointly undertaken by the conspirator and were reasonably foreseeable to the conspirator. Jones, 160 F.3d at 480. The government must prove the reasonable foreseeability of drug quantities by a preponderance of the evidence. See United States v. Rogers, 982 F.2d 1241, 1246 (8th Cir. ), cert. denied, 509 U.S. 912 (1993).

In this case, there was sufficient evidence for the district court to attribute the one kilogram of cocaine to Fraga. Fraga confessed his involvement in drug trafficking. In fact, he testified that he was the only one of the three defendants involved in the four controlled buys. During each controlled buy, Fraga sold powder cocaine to Officer Porras. The package that was sent to 3932 Aldrich Avenue South contained powder cocaine. Fraga lived at 3932 Aldrich Avenue South and was involved in the distribution of powder cocaine. Based upon the evidence, the district court did not clearly err in finding that the one kilogram of cocaine fell within the scope of Fraga's jointly undertaken criminal activity and was reasonably foreseeable to him. Accordingly, Fraga's challenge to the district court's determination of his base offense level must fail.

### F.
### The Obstruction of Justice Enhancement

During Fraga's sentencing, the district court imposed a two-level enhancement for obstruction of justice after it found that Fraga committed perjury. Fraga challenges the district court's finding and imposition of the enhancement. We review a district court's finding of fact in support of an obstruction of justice enhancement for clear error. See United States v. Hang, 75 F.3d 1275, 1285 (8th Cir. 1996). Although we conduct de novo review of a district court's application of the guidelines to the facts, we give due deference to the district court's findings of fact. See id.

The obstruction guideline provides for a two-level enhancement if the district court finds by a preponderance of the evidence that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the [offense charged in the indictment] . . .". USSG § 3C1.1; accord United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996). Perjury at trial and the provision of materially false information

13

to a judicial officer constitute obstruction of justice within the meaning of section 3C1.1. See USSG § 3C1.1, comment. (n. 3(b) and (f)); United States v. Scott, 91 F.3d 1058, 1063 (8th Cir. 1996) (perjury); United States v. Mafanya, 24 F.3d 412, 415 (2d Cir. 1994) (false statements to a judicial officer). A witness commits perjury when he testifies falsely under oath about a material matter with a willful intent to deceive the fact finder. See United States v. Berndt, 86 F.3d 803, 810 (8th Cir. 1996). The act of providing materially false information to a judicial officer also includes a requirement of willful intent to deceive the fact finder. See Mafanya, 24 F.3d at 415.

In this case, Fraga argues that the district court did not make specific factual findings to support an enhancement for obstruction of justice. Fraga also argues that the evidence is insufficient to support a conclusion that he willfully provided false information. Both arguments are untenable.

Fraga correctly asserts that a district court must make factual findings regarding its basis for imposing a two-level enhancement for obstruction of justice. See United States v. Alaniz, 148 F.3d 929, 936 (8th Cir.), cert. denied, 119 S. Ct. 604 (1998). Such findings must be sufficiently detailed to allow meaningful appellate review. See id. There is no indication in the instant case, however, that the district court's factual findings were insufficient. The district court specifically noted that Fraga submitted a notarized affidavit to the court and testified that he was the only defendant involved in the drug transactions. The district court then found that such testimony was contrary to the "overwhelming evidence" (R. at 269) adduced at trial, which unequivocally demonstrated that Molina and Corona were involved in the drug deals. These factual findings by the district court are sufficiently specific to provide this court with a basis for meaningful appellate review.

In reviewing the district court's application of the guidelines to the facts, we find no clear error. Fraga testified at trial and through affidavit that his co-defendants were not involved in any of the controlled buys. The police, however, recorded

Molina on audiotape as she negotiated the details of the drug transactions. She also was videotaped during the drug transactions. In regard to Corona, Officer Porras witnessed his involvement in the final controlled buy. Such evidence provides a sufficient basis for the district court to conclude that Fraga provided false testimony that was willfully intended to deceive the fact finder. Accordingly, we find that the district court committed no error of any kind on this point and the two-level enhancement for obstruction of justice must stand.

## G.
### Acceptance of Responsibility

Fraga argues that the district court erred by refusing to grant him a two-level reduction for acceptance of responsibility. See USSG § 3E1.1(a). We review a district court's decision to award or deny an acceptance of responsibility reduction for clear error. See United States v. Skorniak, 59 F.3d 750, 757 (8th Cir.), cert. denied, 516 U.S. 980 (1995). Fraga contends that he is entitled to an acceptance of responsibility reduction because he admitted his involvement in the drug transactions prior to his trial. Fraga's argument is baseless.

United States Sentencing Guideline § 3E1.1(a) permits a two-level reduction if the district court finds the defendant has clearly accepted responsibility for his offense. See USSG § 3E1.1(a); United States v. Guerrero-Cortez, 110 F.3d 647, 653 (8th Cir.), cert. denied, 118 S. Ct. 604 (1997). Although conviction by trial does not automatically preclude an acceptance of responsibility reduction, see id. at 656, conduct resulting in an enhancement for obstruction of justice is inconsistent with acceptance of responsibility unless extraordinary circumstances are present. See USSG § 3E1.1, comment. (n. 4); United States v. Anderson, 68 F.3d 1050, 1056 (8th Cir. 1995).

15

In this case, the district court found that a two-level reduction for acceptance of responsibility was inconsistent with a two-level enhancement for obstruction of justice. Such a finding is not clear error. In addition, we find no extraordinary circumstances in Fraga's case that warrant an acceptance of responsibility reduction despite the obstruction of justice enhancement.

**H.**
**Confrontation Clause Challenge**

Finally, Corona argues that the district court abused its discretion when it refused to permit Corona's attorney to cross-examine Minneapolis Police Officer Liz Holland regarding her alleged misconduct. Specifically, Officer Holland testified that she interrogated Corona shortly after the final controlled buy. According to Holland, Corona told her that he lived at 3932 Aldrich Avenue South. Corona denies such a statement and contends that he merely used the Aldrich Avenue South address as his mailing address. Officer Holland also testified that Corona told her that he took the controlled buy money from Officer Porras and counted it. Corona denies that he made such a statement.

Officer Holland testified that she did not record her interrogation with Corona. She stated that she did not believe that she was required to record his statements. Corona argues that Minnesota law requires police officers to tape-record custodial interrogations. See Minnesota v. Scales, 518 N.W.2d 587 (Minn. 1994). During cross-examination of Officer Holland, Corona's attorney attempted to show that Officer Holland was aware of Minnesota's tape-recording law and that she committed perjury when she testified that she was not required to record the conversation. The district court prevented defense counsel from inquiring into Officer Holland's knowledge of the Scales decision. Corona contends that the district court's limitation of his cross-examination of Officer Holland violates his rights under the Confrontation Clause of the Sixth Amendment to the United States

16

Constitution. We review a district court's decision regarding the scope and substance of cross-examination under an abuse of discretion standard. See Brown, 110 F.3d at 609.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a defendant the right to cross-examine a witness who is testifying against him. See id. at 611. The right to effective cross-examination includes inquiry regarding a witness's bias, motivation, and prejudice. See United States v. Warfield, 97 F.3d 1014, 1024 (8th Cir. 1996), cert. denied, 520 U.S. 1110 (1997). The right to effective cross-examination, however, is not limitless, and a district court is accorded wide latitude to impose reasonable limits on defense counsel's cross-examination of a government witness. See id. "A critical factor in determining whether a defendant's right of confrontation has been violated is whether the defendant had other ways to obtain the effect that the excluded examination would have allegedly established." Brown, 110 F.3d at 611.

In this case, the district court did not abuse its discretion by limiting Corona's cross-examination of Officer Holland. Although Corona's attorney was not allowed to explore Officer Holland's knowledge of the Scales case per se, the attorney was permitted to ask Officer Holland about her decision not to record the interrogation of Corona. When asked why she believed that she was not required to record the conversation, Officer Holland stated that she was not mandated to record interrogations in federal cases. Defense counsel then inquired further as to the police officer's basis for determining that she was involved in a federal case. The officer responded that she determined that it was a federal case by the quantity of the drugs involved. While the district court did not permit defense counsel to cross-examine Officer Holland about her specific knowledge of the Scales decision, it did afford counsel an opportunity to confront the police officer regarding her statement that she was not required to tape-record her conversation with Corona. The limitations

imposed by the district court did not fatally impair Corona's right to effective cross-examination.  Hence, we find no abuse of discretion.

## III.
## CONCLUSION

For the reasons stated herein, we affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT